30 So.2d 584
**DEATON TRUCK LINE, Inc. v. TILLMAN.**

6 Div. 306.

Court of Appeals of Alabama.
April 15, 1947.

Rehearing Denied May 20, 1947.

Clifford Emond, of Birmingham, for appellee.

R. J. McClure, of Birmingham, for appellant.

BRICKEN, Presiding Judge.

Appellee Oscar Tillman, brought suit against appellant, Deaton Truck Line, Inc., for damages to his, plaintiff's automobile, which was parked at the curb on a public street in the City of Birmingham, Ala. when it was run into and demolished by a truck of said Deaton Truck Line, Inc., on the morning of September 25, 1944. The trial of the case in the court below resulted in a verdict, by the jury, in favor of the plaintiff and against the defendant for $1,000. Judgment was accordingly made and entered. On the motion by defendant for a new trial the court, with the consent of the plaintiff, reduced the amount of the judgment to $900.

Pleading was in short by consent, and the general issue was the only plea relied upon by the defendant. In this connection it was the contention of the defendant that their truck on the occasion of the accident

was not being operated by an agent, servant or employee of the defendant acting within the line and scope of his employment.

■ The foregoing insistence is the only controversial question of fact involved in this case. This question, of course, was for the jury to consider and determine, rendering inapt, the affirmative charge requested by the defendant.

■ The fact that defendant's truck collided with and damaged the plaintiff's automobile on the occasion mentioned is not controverted. It is also without dispute that the operator of defendant's truck on said occasion was negligent. Under the law in Alabama, when the foregoing is shown by the evidence, the burden of proof shifts, and there is a prima facie presumption of law that the person who was driving the truck at the time of the collision was a servant or agent of the defendant, and was acting for it within the line and scope of his employment at that time. However, it can be rebutted or contradicted by testimony.

In the case of Ford v. Hankins, 209 Ala. 202, 96 So. 349, it was said in effect that proof of defendant's ownership of a motor vehicle is sufficient to authorize the inference that the driver at the time was employed by defendant owner and was acting within the line and scope of his employment and such inference must be rebutted by undisputed, clear and convincing evidence before defendant would be entitled to the general affirmative charge.

And further when rebuttal evidence to presumption of agency is so weighted by circumstances, tending to bring it into suspicion and doubt and is not clear and convincing, defendant's responsibility is for the jury, although such evidence might be undisputed.

The defendant operated a large fleet of trucks. The particular truck, here involved, was designated as Unit No. 80, and the regular driver assigned to this truck, was driver Ernest E. Kirby. At the time of this trial in the court below, said Kirby was in the armed service, hence not present at the trial. The plaintiff, however, admitted a showing for this absent witness,

and in order to meet the shifted burden above discussed and to rebut or contradict plaintiff's evidence the defendant introduced, without objection this showing of said absent witness which appears of record as follows:

"I was driver of Unit No. 80, which is a 1944 Chevrolet Truck and Trailer, for the Deaton Truck Line on September 24, 1944. I returned to Birmingham from New Orleans, Louisiana, with this unit about midnight on September 24th. I left the tractor and trailer in front of my home at 1925 14th Avenue South, for the night. I had no cargo or freight on the trailer. When I turned the motor off, I closed the cab door and went in the house and went to bed at once, as I was tired.

"The next morning, I slept a little late. When I woke up, I dressed and had breakfast and went out to get in the truck about 10:00 or 10:30 A. M., when I saw the truck was gone. I felt for my keys and found they were gone.

"I called the Deaton office at once and Mr. Self told me that my truck had just had a wreck at the Birmingham Linen Supply Company's place, on Avenue F. near 29th Street. I then walked and ran from my home to the scene of the accident—a distance of over a mile. When I arrived at the scene, the investigating officers had gone and I talked with Mr. Abernathy, Manager of the Birmingham Linen Supply Company, for whom I had formerly worked as a driver. I also talked to Mr. Golden, Assistant Manager of the Birmingham Linen Supply Company, and he told me the driver of the truck who had had the wreck had gone into the store on the corner and used the telephone.

"I went to this store, which is the Harris Grocery Store, and Mr. Harris told me I was not the man who had used the telephone; that he did not know who this man called; but he described this man to me as being short and stout, weighing from 150 to 160 pounds and wearing grey trousers with a stripe down the pants and a white shirt. I am 5 feet, 11 inches tall and weight 135 pounds, and my uniform is gray pants and gray shirt, with no stripes down the side of the pants.

"I then started to the Deaton Truck Line office. On the way I met a policeman and told him about my truck being stolen and asked that he investigate. He called the Detective Department and two detectives came and carried me to the Deaton Truck Line office, where they told me they thought I was not the driver of the truck, but for me to stay around. I gave the officers my telephone number at my home and went home and spent the night.

"The next morning, Police Car No. 26 came, with two officers, and carried me to the Southside Jail under a charge of reckless driving and leaving the scene of an accident. About two hours later, Officer C. J. Patillo came to the jail and told me he would either free me, or get me in deeper. He asked me to accompany him to see an eye witness of this accident, who was employed at Ingalls Iron Works. I went with Officer Patillo, and, upon interviewing this man, he told Officer Patillo and me that I was not the driver of the truck; that he could identify this driver if he saw him. He described the driver as being short and stout, and wearing light gray pants; that the pants he was wearing had a stripe running down the side; also wearing a white shirt, etc. Then Officer Patillo ordered my release and took me home.

"I was 22 years of age when this accident occurred, and I had been employed then by the Deaton Truck Line for three or four months. I do not know who drove this truck from in front of my home. I did not authorize anyone to take the truck or drive it any place.

· "I am now in the military service of the United States and located in the South Pacific Area.

"(Signed) Ernest E. Kirby."

The defendant also offered other evidence tending to corroborate the material facts contained in the showing, supra.

In reply to the foregoing, the plaintiff insists, and the record appears to bear out this insistence, that the evidence which tends to show the fact that the defendant's truck collided with and damaged the plaintiff's automobile on the occasion mentioned is not controverted. It is also admitted that the operator of defendant's vehicle on said occasion was negligent.

The defendant's truck was a trailer type and appeared to be some 28 or 30-foot trailer. Immediately following the collision with plaintiff's automobile the driver of the truck, who was dressed in a uniform consisting of grey trousers with a black stripe down the center of the leg, white shirt, and grey cap with a badge on the front of it, got out of the truck and went into a small store located on the corner near the accident and used the telephone. Inside the store, which was operated by a Mr. Phillip Harris, this driver was heard by Harris to say over the telephone, "Do you want me to leave it and come down there." Thereafter the driver went out of the store and disappeared from the scene of the accident. In a very short time following this telephone conversation the general manager of defendant company, Mr. Neal G. Collins, appeared at the scene of the accident. Mr. Collins called the defendant's place of business and had them send a wrecker to get their truck. When the wrecker came to the scene of the accident some hour or hour and a half later a man with the crew of the wrecker was identified by Mr. Harris, the storekeeper, as the same man who had gotten out of the truck and used the telephone immediately following the accident. This man was also identified by another witness, George Brooks, as being the same man who got out of the truck immediately following the accident and went into the store to use the telephone. This same driver assisted in getting the truck connected to the wrecker, and when the wrecker left the scene of the accident with the truck this same man was sitting at the steering wheel guiding the truck. While at the scene of the accident making an investigation, police officer C. J. Pattillo, a witness for the defendant, testified that the defendant's manager, Mr. Collins, stated to him (Pattillo) that "one of his men had called him and said he had had an accident." Officer Pattillo further testified that he stayed at the scene of the accident some 30 or 40 minutes investigating the case and that in conversation with the general manager, Mr. Collins, no men-

tion was made that the truck of the defendant was not operated by one of their agents or had been stolen, and that the first he ever heard that the truck was supposed to have been stolen was on the day following the accident. * * * One of the drivers for the defendant, Ernest E. Kirby, was alleged to have been the regularly designated driver of the particular motor vehicle involved in this accident. His testimony was to the effect that he returned from an out-of-town trip late on the night preceding the day of the accident and parked this truck in front of his home which was some several miles from the scene of the accident. His testimony was further to the effect that around 10:00 or 10:30 on the following morning (the morning of the accident) he went out to get in the truck and observed that it was gone; that he then felt in his pocket for the keys to the truck and that the keys were gone. When the general manager, Mr. Collins, reached the scene of the accident the keys to the truck were in the ignition switch and the ignition had not been tampered with.

We accord to the view of the learned and experienced trial judge as expressed in the concise and correct oral charge of the court to the jury, wherein the court said:

"The plaintiff says in this case he claims one thousand dollars as damages against the defendant, Deaton Truck Line, Inc., and he avers that on the 25th day of September, 1944, his automobile was parked on Avenue F between 28th and 29th Streets, and he says on that same date, and same time, the defendant company, or one of its servants or agents acting for it, within the line and scope of his employment as such servant or agent, so negligently operated the truck on that occasion, that it was caused to collide with the plaintiff's automobile, and that plaintiff's automobile was damaged to such extent it was rendered less valuable, and he claims that the injuries and damages to his automobile were proximately caused by the negligence of the defendant's servant or agent while acting within the line and scope of his employment, in operating the defendant's truck on that occasion.

"In reply, the defendant says it is not guilty; and by that plea the defendant denies that any servant or agent acting for the defendant, or in and about its business negligently operated the truck on that occasion. And those are the issues you are trying in this case. It is in evidence here, and there is no dispute that at the time of the operation of the truck on that occasion, it was being operated negligently, which leaves one question of fact for you to decide in this case, as to whether or not the truck belonging to the defendant at the time of the accident was being operated by a servant or agent of the defendant, who was acting within the line and scope of his employment; that is, in and about business for the defendant, the Deaton Truck Line, Inc."

There being, as stated, but one question of fact involved in this case, and this question having been properly, and without error, submitted to the jury to consider and determine, we see no necessity of discussing in detail the numerous other insistences of error presented by appellant.

There was no error in the action of the court in overruling and denying defendant's motion for a new trial.

Affirmed.