68 So.2d 14

### REEVES v. STATE.

3 Div. 663.

Supreme Court of Alabama.

Aug. 6, 1953.

Rehearing Denied Nov. 27, 1953.

Virgil McGee, John N. McGee, Jr., and Henry Heller, Montgomery, for appellant.

Si Garrett, Atty. Gen., and L. E. Barton, Asst. Atty. Gen., and Thos. M. Haas, Montgomery, of counsel, for the State.

70

. MERRILL, Justice.

Appellant, Jeremiah Reeves, Jr., age seventeen years, was indicted for rape by a grand jury of Montgomery County. Upon trial, the jury found him guilty and imposed the death penalty. Judgment and sentence were in accord with the verdict. After his motion for a new trial was overruled, he brought this appeal.

. There is no reason to make a detailed statement of the evidence. The following summary will suffice.

The prosecutrix, a white woman, testified that about 12:15 p. m. on July 28, 1952, a Negro male entered her home and forcibly ravished her, beat her about the head, took some money and departed. A neighbor testified that the prosecutrix came to her house about 12:40 p. m. in a state of shock and hysteria; that she was badly bruised and bleeding and asked her to report the attack to the police. The testimony of two doctors who treated her that day tended to support her claim that she had been ravished. Reeves was arrested Monday November 10, 1952 at 2:10 p. m. On Wednesday morning prosecutrix identi-

fied him at Montgomery police headquarters. . 

. On the trial a witness for the State testified that he saw defendant running along a street about two blocks from where prosecutrix lived; that he picked him up in his automobile a short time before 1 o'clock p. m. and carried him six or seven blocks. The defendant. offered some testimony that he was insane, some as to his good character, denied his guilt and claimed certain statements he had made were the result of coercion and promises. He sought to prove an alibi, that he was present where a group of people were playing dominoes, and this claim was supported by the testimony of one witness. Certain parts of the evidence will be more fully developed in the discussion of the matters raised in appellant's. brief.

· Counsel for defendant argue many points in brief and we consider them as they are raised, numbering them for convenience.

1. Defendant was denied due process because he was arraigned on the day following the return of three indictments against him by the grand jury and required to plead to same when no copies had been served on him.

The indictment was returned on November 14, 1952 and defendant was arraigned November 15th. A copy of the indictment and venire was served on him on November 17th. Our statute requires that the venire and a copy of the indictment be served on the defendant in a capital case at least one entire day before the day set for trial, and that is all the notice to which he is entitled. Title 30, section 63, Code. In the instant case the trial was set for November 26th. "The law neither requires that the defendant in a criminal case shall have previous notice of the indictment nor a copy of it previous to his arraignment." Dix v. State, 147 Ala. 70, 41 So. 924, 925. The defendant pleaded not guilty and not guilty by reason of insanity. The record shows the arraignment to be regular in all respects.

2. Local Act No. 118, 1939 Local Acts of Alabama, p. 66, establishing the jury commission of Montgomery County violates

section 105 of the Constitution, and the jury commission is without legal authority.

█ The local act referred to provides that the jury commission of Montgomery County shall be composed of the circuit judges, the judge of probate, the sheriff and the clerk of the circuit court. This act is not violative of section 105 of the Constitution on authority of State ex rel. Brandon v. Prince, 199 Ala. 444, 74 So. 939. In that case a local act which provided that the members of the board of revenue of Tuscaloosa County should constitute the jury commission was held not to violate section 105 of the Constitution.

3. That Negroes are systematically excluded from jury service by the jury commission.

The defendant filed a motion to quash both the indictment by the grand jury and the petit jury panel on the ground that Negroes have been systematically excluded from the jury rolls. Circuit Judge Eugene W. Carter recused himself on the ground that he had become a witness in said cause and Mr. James J. Carter was appointed special judge to try the case.

█ Circuit Judge Eugene W. Carter and Circuit Clerk John R. Matthews were called as witnesses for the defendant to testify in support of his motion to quash; Circuit Judge Walter B. Jones, James E. Pierce, a Negro school teacher, and D. Caffey, a Negro real estate dealer, were called as witnesses for the State. The testimony of the jury commissioners showed that there was no discrimination as to race or creed and that both races were represented on the panel to try the instant case. The Negro witnesses testified that they had been previously called for jury duty, one having served at least six times, and that they had been requested to furnish names of Negro citizens to the jury commission. Title 30, section 20, Code, requires the names of jurors to be printed on plain white cards all of the same size and texture and printed thereon the name, occupation, place of residence and place of business of the juror. Neither the card nor the actual jury list shows the race of the juror. Defendant showed none of the circumstances to be present which were the basis of the holding in the case of Avery v. Georgia, 345 U. S. 559, 73 S.Ct. 891, nor anything in conflict with our holding in Vaughan v. State, 235 Ala. 80, 177 So. 553. There was no evidence to sustain defendant's motion and it was properly overruled by the court.

4-10. These propositions are concerned with the contentions that Special Judge James J. Carter was without authority to act, and that he did not receive the consent of the defendant as required by section 160 of the Constitution and section 124 of Title 13, Code.

The following is quoted from the record and comes immediately after the recording of the announcement of Judge Eugene W. Carter that he would recuse himself:

"The defendant's attorney and the solicitor were called to the bar in the presence of the defendant, and they stated that the State of Alabama and the defendant had agreed that the Hon. James J. Carter be appointed as Special Judge in the trial of said cause, in accordance with section 124, Title 13 of the 1940 Code of Alabama. The said James J. Carter was called to the bench and was informed of the agreement that he serve as Special Judge in the case, and asked if he would serve. He stated in addition to agreement of counsel he would prefer to have an appointment by the Governor of Alabama to make it doubly sure that no objection be made to his appointment as Special Judge. The defendant's attorney, in the presence of the defendant, stated that at no time would he make any objection to the appointment of James J. Carter as Special Judge.

"Hon. Eugene W. Carter, presiding, thereupon recused himself from sitting at said trial; and the case was then continued for trial until November 28th, 1952."

The defendant offered no evidence at any time to show that the above statement in the record is incorrect.

The Governor of Alabama did appoint James J. Carter as Special Judge to hear the case, and defendant's attorney agreed and stated he had no objection thereto.

■ · The· statutory grounds of disqualification of a judge, section 6, Title 13, Code, are not exclusive so as to eliminate grounds for disqualification under the common law. Ex parte Benson, 254 Ala. 47, 47 So.2d 180. Judge Eugene W. Carter was eminently correct when he recused himself on the ground that he had become a witness. The rule is stated in 48 C.J.S. Judges, § 83(b), page 1068: "A trial judge should not preside in a case in which he is a material and necessary witness."

■ 11. Defendant was denied due process of law and denied his constitutional rights because the assistance of a private stenographer was denied his counsel.

On the morning of November 26th, prior to Judge Eugene W. Carter recusing himself, he had ruled that only officials of the court, witnesses and relations of the accused could remain in the court room.

Defendant's counsel stated that Mr. Ira Fred Watson, a private stenographer, was supposed to be present and he wanted Mr. Watson to assist him in the trial. The solicitor objected on the ground that Mr. Watson was not a court official and the court denied counsel's request. However on November 28th, prior to the noon recess and prior to the taking of the testimony of the State's first witness at 2 o'clock p. m., Special Judge James J. Carter presiding, the following took place:

"The Court: What about your motion to have a stenographer assist you? You may have one if you like.

"Mr. McGee: · I will not press that. ·I cannot locate him now."

12–13. Inculpatory admissions or admissions in the nature of confessions or a confession of actual guilt by defendant were admitted into evidence although defendant offered to show that a previous confession had been obtained from him based on the promise that the only way to keep out of the electric ·chair was to confess this and another criminal assault.

Certain statements made by defendant to the prosecutrix and a psychiatrist were admitted in evidence. The defendant objected and offered to show that defendant had confessed that he had committed this and other offenses after he had been taken into the room at Kilby prison where the electric chair is located and there told by the deputy warden of the prison that the only way to keep out of the electric chair was to say that he committed the offense. No such alleged confession was ever offered or introduced in evidence. The court permitted the defendant to testify to the above mentioned conversation with the deputy warden but would not allow the particulars of the alleged confession to be given in evidence because no confession made at Kilby prison had been introduced.

■ The defendant contends that the rule in Huntley v. State, 250 Ala. 303, 34 So.2d 216, applies, the rule being:

"Where a confession has been obtained, or inducement held out, under circumstances which would render a confession inadmissible, a confession subsequently made is not admissible unless, from proper warning of the consequences, or from other circumstances, there is reason to presume the hope or fear which influenced the first confession is dispelled, and in absence of any such circumstances influence of the motives proved to have been offered will be presumed to continue, and to have produced the confession unless the contrary is shown by clear evidence."

We come now to the consideration of defendant's statements which were admitted in evidence.

The prosecutrix testified that after the assault she next saw defendant at police headquarters in Montgomery on Wednesday, November 12th, that she identified him and a few minutes later talked with him in the presence of two other women, a Lieut. Miller and other policemen in the room. A proper predicate was laid for the introduction of the conversation and defendant objected by written motion. The jury was excluded and defendant was permitted to examine prosecutrix as to what happened in her presence. After hearing the evidence, the court ruled the statement was voluntary; the jury was recalled and the following took place:

"Q. I am going to ask you the question over again. The question I asked was this. Did he make any statement to you at police headquarters on the 12th, Wednesday, the 12th of November? Did you have a conversation with him? A. Yes, sir; I did.

"Q. I would like you to tell the jury what conversation you had with him, who asked the first question, what the reply was, as best you remember. A. I asked the first question.

"Q. What was the question, what did you ask him? A. 'Why did you do it?' And to that he just shook his head, and later he said, 'I don't know.'

"Q. Did he deny he raped you? A. No, he did not.

"Q. Did he recognize you? A. Yes.

"Mr. McGee: I object.

"By the solicitor:

"Q. Let me put it this way. Did he say anything that would show he recognized you? A. Yes, he did.

"Q. What did he say? A. He was asked which house was I in—'where do you remember her from?' And he told them, 'Cleveland Avenue, the first one.'

"Q. 'Cleveland Avenue, the first one'? A. Yes.

"Q. He said that to you at that time? A. He was speaking to someone else, but I was in the room.

"Q. Did you have any other conversation with him yourself? A. Yes. I asked him by which door he entered the house, and he said he entered by the back door.

"Q. I want you to look at this defendant. Now, do you positively identify him as the man who raped you? A. Yes."

▇▇▇ While these statements of defendant are not direct confessions of guilt, we think they are inculpatory admissions in the nature of a confession—that is, directly relating to the fact or circumstances of the crime and connecting the defendant therewith, and as such are subject to the same rules of admissibility as direct confessions, and are therefore prima facie involuntary and inadmissible. McGehee v. State, 171 Ala. 19, 55 So. 159; Herring v. State, 242 Ala. 85, 5 So.2d 104; Tillison v. State, 248 Ala. 199, 27 So.2d 43. They therefore require a predicate showing that they were voluntary. Another witness testified to a confession of defendant. The admission of this testimony was not discussed in appellant's brief but it is our duty to consider it under the automatic appeal statute. Sections 382(1)–382(13), Title 15, Code 1940, Pocket Part. During the cross examination of defendant he both denied and admitted telling Dr. Bazar, a Montgomery psychiatrist, that he had raped prosecutrix. On rebuttal by the State, Dr. Bazar testified that he had examined the defendant on November 13th and November 20th for approximately two and a half hours each time, seeking to determine the sanity of accused. After a proper predicate had been laid and the court had offered to allow defendant to present any evidence showing that any one at that time used any coercion or force on him, Dr. Bazar testified that the defendant told him that he had raped the prosecutrix. He also testified that in his judgment defendant was sane.

▇▇▇ As we have already observed, the court went into the matter of the voluntariness of these statements out of the presence of the jury and held them to be voluntary. This Court said in the case of Dennison v. State, 66 So.2d 552, 556,[1] "The duty, as we have said so many times, of determining the voluntariness vel non of a confession so as to authorize its admissibility is addressed to the trial court in the exercise of an enlightened discretion", and in Fewell v. State,[2] 66 So.2d 771, we find this statement: "This court has held that the court's decision allowing a confession in evidence will not be disturbed unless it appears that it is palpably contrary to the great weight of the evidence. Vernon v. State, 239 Ala. 593, 196 So. 96." The court charged the jury on this point as follows:

1. 259 Ala. 424.

2. 259 Ala. 401.

.."Now, as to any statement, or alleged confession or admission which may have been made, the weight of such a statement or admission is for you and you alone, and you are to determine the weight and credibility of the evidence here in the light of the circumstances that were existing at the time such statement was given."

The defendant was questioned from 2:10 p. m. to 7:30 p. m. Monday, most of the day Tuesday and part of the forenoon on Wednesday. He did not claim any physical violence or threat of it to procure any statement from him.

We come now to the question of the psychological coercion. Under defendant's own description of his interrogation it was not shown that he was deprived of refreshment, rest or relief or that it was so prolonged and unremitting as to accomplish extortion of an involuntary confession. There was no evidence or claim of the employment of the "relay technique".

It is not disputed that defendant was held incommunicado until the afternooon of November 12th, but there is no claim made that he was *illegally* detained. The Supreme Court of the United States has held that the requirements of the Fourteenth Amendment do not "impose rules of evidence on state courts which bind them to exclude a confession because, without coercion, it was obtained while a prisoner was uncounseled and illegally detained. Stroble v. California, 343 U.S. 181, 197, 72 S.Ct. 599, 607, 96 L.Ed. 872; Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166." Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 1094.

▮▮▮ At this point we should recall that although defendant testified that he had been told if he would admit having raped the prosecutrix that would keep him out of the electric chair, there was no evidence of a confession on direct testimony offered by the State. That came only on rebuttal from Dr. Bazar after the defendant had been questioned about his conversation with Dr. Bazar and the proper predicate had been laid as to the voluntariness of the statement. The inculpatory admissions made to the prosecutrix did come on direct presentation

of the State's evidence. In considering all the evidence, especially the fact that the solicitor told the defendant on the afternoon of November 11th (Tuesday) that he could make him no promises and the law would have to take its course, and that there is no claim of coercion or promises made to defendant when he had the conversation with prosecutrix Wednesday at police headquarters and the finding of the court, after taking evidence, that the statements were voluntary, we cannot say that the admission of these statements was reversible error. Moreover, the admissions to the prosecutrix and the confession to Dr. Bazar did not form the basis of a conviction. The State had established the identity of this defendant as the perpetrator of the crime by very convincing proof "and the matter of confession was but cumulative and approached what might properly be termed supererogation", Johnson v. State, 242 Ala. 278, 5 So.2d 632, 636, certiorari denied 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763; Id., 316 U.S. 713, 62 S.Ct. 1310, 86 L.Ed. 1778, or as stated in Stein v. New York, supra, "Here the evidence of guilt * * * is enough apart from the confessions so that it could not be held constitutionally or legally insufficient to warrant the jury verdict."

14. After the testimony closed defendant moved for a mistrial on the ground that counsel had just learned that one juror was chief of the Montgomery Reserve Police Force, organized for the purpose of tracking down rapists and burglars.

▮▮▮ This motion was denied by the court on the ground that each juror had been qualified separately and individually and the juror had not been disqualified. Counsel for defendant then asked to be allowed to question the juror himself. This request was properly refused by the court under the rule of Vernon v. State, 239 Ala. 593, 196 So. 96, and Ball v. State, 252 Ala. 686, 42 So.2d 626, 631, that "objections going to the venire of the petit jury or any member thereof, must be made before entering upon the trial of the case on its merits under the defendant's plea of not guilty, and a failure to make such objections constitutes a waiver. Peterson v. State, 227 Ala. 361, 150 So. 156." See also

Shepherd v. Kendrick, 245 Ala. 541, 17 So. 2d 763; Batson v. State ex rel. Davis, 216 Ala. 275, 113 So. 300.

15. The expression of an opinion by the trial judge as to a fact in issue was reversible error.

During the trial defendant's counsel was referring to the conversation of the prosecutrix with the defendant and the court stated that it had already held that statement to be admissible as being voluntary. Counsel for defendant moved for a mistrial which was overruled and the court made this statement to the jury:

"I want to explain the ruling of the court just given. The credibility of a statement given by a witness is simply for the jury; the court has no opinion at all, and expresses none on the record."

It is clear that the remark of the trial judge that he had previously held the tended to prejudice the defendant's case be statements to be "voluntary" did not injuriously affect the substantial rights of the defendant or make any intimation which fore the jury. The cases of Pate v. State, 19 Ala.App. 243, 96 So. 649, and Hair v. Little, 28 Ala. 236, cited by defendant, are not applicable here.

16. The evidence is insufficient to support a conviction of rape.

The evidence was not only sufficient to take the case to the jury on the charge of rape, but was amply sufficient to support the verdict of the jury.

On the whole evidence with respect to the inculpatory admissions to the prosecutrix and the confession to the doctor, there is nothing to show that the trial court's action in admitting them was manifestly wrong or 'that defendant's rights under the Federal Constitution were infringed. Phillips v. State, 248 Ala. 510, 28 So.2d 542; Peoples v. State, 256 Ala. 612, 56 So.2d 665; Thomas v. State, 257 Ala. 124, 57 So.2d 625; Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; Stein v. New York, supra.

In accordance with our duty in cases of this character, we have examined the record for any reversible error, whether pressed upon our attention or not. We have dealt herein with all questions calling for treatment. We find no reversible error in the record and the cause is due to be and is affirmed.

Affirmed.

All the Justices concur.