186 So.2d 725

**Olen Ray LOYD**

v.

**STATE.**

**2 Div. 60.**

Court of Appeals of Alabama.

Oct. 8, 1963.

Rehearing Denied Nov. 12, 1963.

Sam Earl Esco, Jr., Selma, and Gordon & Cleveland and Bryan Chancey, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., Geo. D. Mentz and Paul T. Gish, Jr., Asst. Attys. Gen., for the State.

PRICE, Presiding Judge.

The appellant, Olen Ray Loyd, was convicted of an assault with intent to murder. His punishment was fixed at imprisonment in the penitentiary for twenty years.

The defendant moved the court to quash the indictment on the ground that it was based solely upon an alleged confession of guilt; that the confession was coerced during defendant's illegal detention, due to failure to have the warrant endorsed by a magistrate of Jefferson County, and to carry him before a committing magistrate; that defendant was denied bail and was not allowed to confer with counsel, his wife or his friends.

On the hearing of the motion to quash the indictment three of the grand jurors testified the sheriff was the only witness who appeared before the grand jury; that he presented a signed purported confession of the defendant.

The sheriff testified he appeared as a witness before the grand jury; that he presented to them the defendant's confession; that he was present when the confession was signed and no threats were made and no promises of reward, inducements or favors were given to obtain the confession. The sheriff admitted he arrested the defendant in Birmingham on a warrant issued by a magistrate of Dallas County without the endorsement of a magistrate of Jefferson County, required by Section 163, Title 15, Code 1940, and that he did not carry him forthwith before a magistrate (Sec. 160, Title 15, Code), but placed him in a cell in the Selma jail. The sheriff stated the defendant's attorney, Mr. Esco, was not permitted to see the accused because the defendant said he did not want to see him, and that defendant wrote a note to the attorney, which was admitted in evidence as State's Exhibit "A." The note reads:

"Time 7:45 p. m. 1–20–62. Mr. Esco I did not request you to defend me. I prefer Mr. Hawkins from Gadsden, Alabama."

Signed, "O. R. Loyd."

The sheriff further stated he testified before the grand jury as to what had been told him by experts in the field of technology. On cross-examination he testified he participated in the investigation of the case almost from the beginning and was present when most of the evidence was obtained by the experts; that he had personal knowledge of this evidence and he revealed such facts to the grand jury.

The court overruled the motion to quash the indictment. In this ruling we find no error. We cannot agree with the insistence of counsel that the confession was shown to be illegal and inadmissible. The undisputed proof showed it to have been made voluntarily. See Boudreaux v. State, (Miss.) 174 So. 558. Under Alabama law, a confession is not inadmissible solely because it was secured after an unlawful arrest and before the accused was taken before a committing magistrate. Ingram v. State, 252 Ala. 497, 42 So.2d 36; Myhand

v. State, 259 Ala. 415, 66 So.2d 544; Goldin v. State, 271 Ala. 678, 127 So.2d 375.

■ We find no merit in the contention that the court erred in sustaining the State's objections to questions asked the grand jurors as to what testimony the sheriff gave concerning the crime; whether he gave details as to where, how, when and under what circumstances the confession was given; what did he say the gun shell had to do with the case? Did he say the shell was from the gun found in defendant's automobile? How did he come into possession of it, etc. The rule is:

"If the grand jury had any legal evidence before it to authorize a bill, all inquiry as to the nature, character and sufficiency of any other evidence introduced before it is cut off, when sought for the purpose of attacking the validity and integrity of the indictment."

Gaines v. State, 146 Ala. 16, 41 So. 865. See also Sparrenberger v. State, 53 Ala. 481; Reeves v. State, 264 Ala. 476, 88 So.2d 561.

■■ Appellant's counsel also made an oral motion for a continuance until such time as other parties charged with the same or similar crimes are tried, or until such time as the venire shall not be prejudiced by reports of a voluntary confession by this defendant. In support of the motion, counsel introduced newspaper articles published in the Birmingham Post-Herald, the Montgomery Advertiser and the Selma Times-Journal.

The granting or refusing of a continuance is largely within the sound discretion of the trial court, whose action in the premises will not be disturbed except for abuse. Haynes v. State, 40 Ala.App. 106, 109 So.2d 738.

Newspaper publicity does not necessarily constitute grounds for a continuance. Collins v. State, 234 Ala. 197, 174 So. 296.

From a consideration of the newspaper clippings introduced we find no basis for holding that there was an abuse of the court's discretion in the denial of the motion. See Goldin v. State, supra, and the authorities there cited.

The tendencies of the state's evidence are summarized as follows:

About midnight on January 17, 1962, one C. L. Warren, who was employed by West Brothers Motor Express and who was a member of Teamster's Union, Local 612, left Birmingham driving a West Brothers tractor, pulling a trailer for Bowman Transportation Company. He was headed south through Alabama, his destination being New Orleans, Louisiana. Several other trucks were making the same trip. One Edward Gorff was driving a truck immediately behind the one driven by Warren.

After leaving a truck stop near Centreville, Alabama, Warren and Gorff noticed a 1959 White Ford Galaxie, carrying a Jefferson County license plate, as it passed them, traveling in the same direction as their trucks. Gorff noticed that this Ford's right tail light was not burning and that a black object lay on its back window shelf. A short time after this car had passed the trucks, a car of similar type was seen by Gorff coming north toward Warren and himself. As this car met Warren's truck a shot was fired which hit the truck and struck Warren in the arm and in the chest. Gorff stopped his truck to assist Warren. Warren was hospitalized at Selma for twelve days, during most of which time he was in a critical condition.

State Highway Patrolman J. E. Williamson testified that at 3:20 a. m., January 18, 1962, he was instructed to set up a road block at the intersection of Highways 5 and 11 in Bibb County and check all vehicles for weapons, because a truck driver had been shot near Selma. At 5:00 a. m. he stopped and searched a four-door 1959 White Ford automobile occupied by one Jesse E. Douglas, and appellant, who was the driver. Williamson found a shotgun and a small box of Peters high velocity shells, and allowed the automobile, bearing

an Etowah County license plate, to proceed on its way. As the car drove away Williamson noticed only one tail light was burning. On cross-examination he stated the men were released after investigating the car because his first information was that a rifle had been used in the shooting. Later that day in Anniston he checked an automobile and identified it as the one in which appellant and Douglas had been riding when they were stopped by him at the road block.

At approximately 8:00 A.M., January 18, 1962, after an alert for the car had been broadcast, appellant and Douglas were stopped, but not arrested, by the police chief of Ohatchee, Alabama. They were taken to the State Highway Patrol office in Anniston. There, without any charges being preferred but on the strength of information that they were suspects, they were held for questioning by the Dallas County sheriff. A search of the automobile in Anniston revealed a Jefferson County license plate under the front floor mat on the driver's side of appellant's car. This car, a White 1959 Ford Galaxie, the right tail light of which was disconnected, bore an Etowah County tag and had an umbrella on its back window shelf. Other articles, including three guns one of which had been fired recently, were found in and on various parts of the automobile.

Appellant and Douglas were taken from Anniston to Birmingham where they were turned over to the sheriff of Dallas County. They were then taken to Selma and placed in the county jail.

The Ford automobile in which appellant was riding when he was taken into custody in Calhoun County was brought to Montgomery and examined by a state criminalist. At the trial several articles taken from the automobile were introduced in evidence.

A shotgun shell hull, shown by the evidence to have been fired from a gun found in appellant's car, was found in the vicinity of the crime by local law enforcement officers and was introduced in evidence by the state.

The state introduced a written confession made in the Dallas County jail on January 20, 1962. Before it was admitted in evidence the state introduced evidence, both in and out of the presence of the jury, tending to show that no threats were made against accused and that he was not promised a reward or offered any inducement for making the confession.

The defendant objected to the introduction of the confession on the grounds that defendant was held incommunicado, not permitted to see his friends or his attorney; was not taken before a magistrate or allowed bail; that there were "teams" of men in from time to time participating in the questioning of accused.

Lieutenant Holmes, a criminal investigator for the highway patrol, stated he first began interrogating the defendant on Friday afternoon around three o'clock, and questioned him off and on until about nine. Mr. Robert L. Frye, a special agent for the FBI, at Selma, was present, and Sheriff Clark and some of the county officers were in and out of the room at various times. The next day at three o'clock the witness went back to the jail and when he walked in accused told him he was ready to confess. Witness began preparing the written statement and questioned accused while he was writing the confession. The largest number of law enforcement officers in the room at any one time was five. The witness is a Mason and accused made certain signs by which witness determined accused was also a Mason, but he never told accused that unless he confessed witness could make him suffer the rest of his life, or if he would sign the statement it would not be made public; that neither he nor Mr. Frye told defendant if he would sign the confession they would try and get him probation, or that as soon as he signed he could see his wife and she would be allowed to stay as long as he wished. Defendant was permitted to telephone his wife, and on Friday

night he called a number listed in the phone book as that of a Selma attorney, and spoke to someone there. On Saturday night he refused to see the attorney when he came to the jail, and sent a note out to him saying that he did not request that he defend him but he preferred the services of a Gadsden lawyer.

Substantially the same facts were testified to by Mr. Frye.

On cross-examination these witnesses testified concerning the condition of the jail and the size of defendant's jail cell.

The Judge of the Dallas County Court testified he declined to set bail for defendant because the injured person was in a critical condition and might die, in which event the charge might be murder in the first degree; that the grand jury preferred an indictment prior to January 25, 1962, the date the arrest warrant was returnable to the county court, which removed the matter from the jurisdiction of his court into the circuit court.

The appellant's wife testified she was notified on Friday, January 19, 1962, that her husband was in the Dallas County Jail and Mr. Esco telephoned her Friday afternoon or evening. She talked with her husband on Saturday. She arrived at the Dallas County Jail between seven and eight that night, but was not allowed to see her husband at that time. Two men downstairs told her they had been there all day but had not been allowed to see her husband. She talked with Mr. Esco, the attorney, until around eleven, when she was told she could go in alone to see her husband and if the attorney didn't get out he would be thrown out. The officers appeared very angry. Her husband told her he was confined in a small box-like place, which was very hot, and he had been warned he and his family would be ruined unless he cooperated with them during the interrogation. Later in the evening she had a conversation with the sheriff in which he said her husband needed her there because of his nervous, upset condition, and asked if she would consider spending the night with him. She then made arrangements for the care of her children and spent the night at the jail. The sheriff volunteered the promise she would be given protection, and she did not ask for protection. The sheriff's deputies drove her home on Sunday and would not allow her to talk to the men at the jail who were asking to see her. She said her husband had not told her he had not been mistreated, but he told her he was warned that he and his family would be ruined if he failed to co-operate with the officers; that she did not know her husband told the officers he wanted to complete his statement before he saw her; that she was shown the note her husband signed saying he didn't want to see Mr. Esco, but after she had seen the note she told the sheriff and solicitor that Mr. Esco was her attorney and insisted that he go in with her to see her husband but the officers would not allow him to go with her.

■ The testimony of the state's witnesses to the effect that the confession was not obtained through threats, promises or persuasion, made out a prima facie case for its admission in evidence. Berry v. State, 231 Ala. 437, 165 So. 97, and as has already been said, a confession is not rendered inadmissible merely because it was obtained while a defendant is "uncounselled and illegally detained." Reeves v. State, 260 Ala. 66, 68 So.2d 14. It was for the jury to determine the weight and credibility to be given the confession upon a consideration of all the circumstances under which it was made. White v. State, 260 Ala. 328, 70 So.2d 624; Robinson v. State, 38 Ala.App. 315, 82 So.2d 815.

Two confessory statements were signed by the defendant at the jail, but only the one relating to the crime committed in Dallas County was introduced in evidence.

According to the confession, on the night of January 17, 1962, Defendant and Douglas went from Gadsden to Birmingham, where they were instructed to scare the drivers of the tractors pulling Bowman Transportation

Company trailers traveling from Birmingham south, by firing upon them with a shotgun. They were to do this because the Teamster's Union Local, of which they were members, was on strike.

In Birmingham one Sam Webb, President of Teamster's Union, Local 612, gave defendant a Jefferson County license plate to put on his automobile and a tankful of gasoline.

Defendant and Douglas left Birmingham at about the same time the trucks started their trip to New Orleans. They passed the trucks several times, but waited to fire upon them when they were in Dallas County. Defendant was driving the automobile and Douglas fired the shot which hit Mr. Warren and his truck.

Robert B. Finley, an expert witness employed by the State of Alabama, as a "Criminalist," testified that ammunition found in defendant's car contained similar elements in the same proportions as the ammunition fragments found inside the cab of Warren's tractor; that the shotgun shell hull found in the vicinity of the crime had been fired from a gun found in appellant's car; and that test firings indicated that the shots which struck Warren's tractor were fired from a distance not greater than eight feet.

■ Appellant's counsel insists the evidence does not support a conviction for assault with intent to murder. The argument is that the state is bound by its own evidence, the defendant's confession, in which the defendant stated he intended merely to frighten and not to kill the truck driver, and no intent to take life is shown.

The jury may give to the confession such weight as it thinks proper. Fikes v. State, 263 Ala. 89, 81 So.2d 303; White v. State, supra.

The intent to take life is an essential element of assault with intent to murder, but such intention may be inferred by the jury from the character of the assault, the use of a deadly weapon, and the other attendant circumstances. Sparks v. State, 261 Ala. 2, 75 So.2d 103.

Under the evidence adduced we are of the opinion the defendant was not entitled to the general affirmative charge.

We also hold that the verdict was not contrary to the great weight of the evidence.

■ In response to a writ of certiorari issued out of this court, the clerk of the Circuit Court of Dallas County, has certified the true and correct copy of the judgment entry of Judge Hare, entered in compliance with the order of the Supreme Court in Ex parte Loyd, 275 Ala. 416, 155 So.2d 519. The judgment entry affirmatively shows the arraignment, plea of not guilty, jury verdict, judgment rendered in accordance therewith, and the sentence imposed. This is decisive of the appellant's motion to strike portions of the transcript of the record and to discharge the appellant. The motion is overruled.

We find no reversible error in the record. The judgment below is ordered affirmed.

Affirmed.

Reversed and remanded on authority of Loyd v. State, 279 Ala. 447, 186 So.2d 731.