LEIGH M. CLARK, Retired Circuit Judge.
This appellant was convicted on a jury trial of rape in the first degree. The court sentenced him to imprisonment in the penitentiary for a term of ninety-nine years.
Appellant is represented by counsel appointed by the trial court, different counsel from those representing him on the trial. They have submitted a brief in which eight issues are presented. None of the issues challenges the sufficiency of the evidence to support the verdict and judgment. Therefore, an extraordinarily brief resume of the facts in general should suffice, which we will undertake to give before our consideration of the issues presented by appellant.
According to the testimony of the alleged victim, she had returned to her home about 1:15 P.M. on January 27, 1982, from a lengthy shopping trip by automobile, had entered her home, had put up some of her groceries, had laid other groceries on a table, had turned on the TV, and was “looking at a magazine,” when the following happened:
“It was — the wind wasn’t blowing much that day but a little bit and I heard the stormdoor click and I thought it was just the wind closing it — that it hadn’t closed when I came in, and I looked out and didn’t see a car and then I heard the wooden door open and close and I asked who it was. I thought it might be one of the neighbors that I didn’t hear anything and I started to get up and about that time a man came around the foyer with a ski mask on and a gun in his hand.
“Q. Okay; now, what part of the house were you in at that time?
“A. In the living room.”
Thereafter, a rather loquacious direct interrogation and answers ensued, in which the witness related that at the intruder’s insistence and assurance that he would not hurt her, the intruder, still with his ski mask on and his gun in his hand, pushed or guided her “straight up the stairs in my bedroom door and he took me into my bedroom and I kept pleading with him not to shoot me.” Without going into any further details, other than to state that she said he had sexual intercourse with her contrary to her desire, after she had stated to him:
“... I asked him ‘What he wanted?’ and I said, ‘Please don’t shoot me. If you will put the gun down I will do what you *1023 want.’ I said, ‘I’m very scared of guns’ and he said, ‘If you’ll promise that you won’t run if I put the gun down’ and I said ‘Yes.’ So, he laid the gun down.”
The alleged victim could not identify the assailant as the defendant.
Mr. Wesley Hardeman testified as a witness for the State. He was a school teacher who was at home that day on sick leave. He lived diagonally across the street from the alleged victim and her family. He testified that between 1:30 and 2:00 on January 27,1982, he saw a man, whom he identified as the defendant, in the yard of the alleged victim and her family. He said the man was “proceeding from the corner of the house — from the front of the house across the corner of the . .. yard [the omitted name is the possessive of the name of the alleged victim’s family], across the ditch to Newport Drive.” He further testified that the man had on “some type of covering on his head” and looked as if he “was concealing something under his coat.”
The defendant was arrested on August 16, 1982, and was confined, since that date to and through the trial of this case, in the Jackson County Jail. He testified generally as to his whereabouts on the day of the alleged crime and thereafter until the day of his arrest and emphatically denied that he had ever seen the alleged victim prior to his arrest and said he had never been in her house.
I.
We now consider the first issue presented by appellant and will thereafter consider the rest of the eight issues presented in the order of their presentation in the appellant’s brief. By the first issue, appellant contends that the “trial court erred in permitting the defendant’s testimony to be impeached by the State on an immaterial matter.” The contention pertains to some testimony of Mrs. Terry Cogburn, the last witness on the trial of the case, whose testimony was in part as follows:
“Q. Did you see the Defendant, Donald Lawrence, the night of August the 16th?
“A. Yes, sir, I did.
“Q. Was it there in the area of your house?
“A. Yes, sir, it was.
“Q. At approximately what time was this?
“A. It was about 10:15.
“Q. Okay; and where did you see the Defendant at that night?
“A. I saw him walking off my back porch.
“Q. Did you get a good look at the Defendant at that time?
“A. Yes, sir, it was lighted up very well.
“Q. Who else was at home?
“A. My son.
“Q. Are you married?
“A. Yes, sir.
“Q. Where was your husband?
“A. At work.
“Q. How close of a look did you get at the Defendant that night?
“A. Well, it was close. I would say ten or twelve feet.”
Prior to such testimony, defendant had interposed an objection on the ground that it was an effort to impeach defendant on an immaterial matter. After the testimony, defendant moved the court to exclude such testimony on the ground that it constituted impeachment of the defendant as a witness on an immaterial matter. He had testified that he was in Scottsboro, where Mrs. Cog-burn then lived, on the night of this appellant’s arrest, but that until his arrest he was not out of his car but one time and that was to change a tire. He denied knowing Mrs. Cogburn and specifically denied having been at her house or in her yard on the night of his arrest. We agree with appellant’s general proposition that a witness should not be allowed to impeach another witness as to an immaterial matter, but we disagree with appellant’s contention that the evidence was inadmissible by reason of its constituting an impeachment of the defendant as a witness to an immaterial matter. We can understand that the introduction of the testimony of Mrs. Cogburn had the appearance of testimony for the purpose of impeaching the testimony of de *1024 fendant. It may well be that the State should have offered the testimony of Mrs. Cogburn during its case in chief and not have waited until after defendant had rested his case in order to do so, and it may well be that it was objectionable on the ground that it was not properly evidence in rebuttal. However, this is not the issue for us to decide. The evidence was relevant, competent and material, irrespective of the fact that it was inconsistent with what the defendant had testified as to his whereabouts and actions on the night of his arrest in the instant case. The evidence shows without dispute that while defendant was in Albert-ville on a night about a month before the incident referred to by Mrs. Cogburn, there was either on his person, or near him, or in the automobile he was driving that night, a pistol, a pistol holster, and a ski mask. These circumstances, when connected with the testimony of Mrs. Cogburn to the effect that he on another night was in her backyard and on her porch at approximately 10:15 o’clock, were relevant, competent and material evidence as to the identity of defendant as the intruder equipped with a pistol and disguised with a ski mask that committed the crime of rape for which defendant was tried and convicted. This particular evidence does not come within the general exclusionary rule as to the commission of crimes not charged within the indictment under which the defendant is being tried. The evidence meets the test of what is stated by Judge McElroy in the first paragraph of Gamble, McElroy’s Alabama Evidence, § 69.01(8) (1977), as follows:
“All evidence tending to prove a person’s guilt of the now-charged crime may be said to identify him as the guilty person. However, the identity exception to the general exclusionary rule is much more specific in that it contemplates the situation where the now-charged crime was committed in a novel and peculiar manner and the State is allowed to show that the accused has committed other similar offenses, in the same novel and peculiar manner, in order to show him the perpetrator of the now-charged crime.”
Also pertinent and persuasive is the following from Gamble, McElroy’s Alabama Evidence, § 70.01(22)(b) (1977):
“One of the primary exceptions for allowing evidence. for prior and subsequent crimes is when such other crimes go to show the identity of the perpetrator of the now charged offense. In other portions of this text we have seen that this exception conditionally has been applied only when the person who committed the now-charged crime did so in a novel or peculiar manner. It is reasoned that this should permit the prosecution to show that the accused committed other similar offenses in the same novel or peculiar manner. However, the identity exception seems to have taken on a more liberal definition when the defendant is charged with a sex crime such as rape. In such cases the courts seem to allow proof of other similar crimes by the accused if they, in any way, go to identify him as the person who committed the now-charged crime.”
II.
Appellant contends that the trial court erred “in permitting the State in this rape prosecution to introduce evidence of this defendant’s commission of other crimes, towit, possession of a pistol and trespassing, in another city with third persons some five or six months subsequent to the time when the rape took place.” The contention is directed at testimony of Officer Darrell Childress, of the Albertville Police Department, who testified that while answering “a prowler call at a housing complex” at approximately “12:55 a.m.” about a month before defendant’s arrest for rape, he observed defendant as he was near “the rear of an apartment, went up to the door and tried to open the door,” that a light went on in the apartment and at that time the defendant “stepped back in the shadow and behind a fence — behind a fence next to the apartment.” Promptly thereafter the officer apprehended the defendant and placed him under arrest. Officer Childress testified that the defendant had on his person at the time a pistol holster, that the officer *1025 located a pistol on the ground near where defendant was while prowling behind the apartment building and that in the defendant’s automobile was a ski mask. We disagree with the contention of appellant that such evidence constituted evidence of distinct and independent offenses. The facts distinguish the instant case from Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953) and Bridges v. State, 284 Ala. 412, 225 So.2d 821 (1969), relied upon by appellant. The evidence had a tendency to prove that defendant was the person who committed the rape involved in the instant case, even though such rape was committed “some five or six months” before the incidents for which defendant was apprehended in Albertville, about forty miles from where the rape occurred in Scottsboro.
III.
Appellant asserts in his brief that the trial court erred in permitting the State “to introduce evidence of other subsequent crimes committed by this defendant after the State had introduced evidence showing commission of the rape offense charged and the defendant’s guilty connection therewith by the direct, positive testimony of several witnesses.” However, appellant does not contend that there was no factual issue between the parties as to the identity of defendant as the man who had committed the crime as to which the alleged victim testified. The defendant, himself, testified that he was not the man, and evidence was presented by defendant by other witnesses that tended to show that defendant was not present at the time of the alleged crime. This is definitely not a ease in which there was any contention whatever upon the part of the defense that the intercourse between the two was consensual. If such were the issue between the parties on the trial, we would agree that the evidence complained of in appellant’s Issue III would have been inadmissible. The mere fact that there was other strong evidence as to the identity of the defendant as the one committing the alleged crime is no good reason why other evidence as to such identity should not have been admitted.
IV AND V.
In his argument as to Issues IV and V, appellant asserts in his brief, “Issues No. IV and No. V involve the manner in which the State was allowed to cross examine the defendant’s character witnesses.” Appellant states Issue No. VI thus: “Whether the trial court erred in allowing the State to offer proof of defendant’s bad character by specific acts of misconduct.” As appellant limits his argument as to Issues No. IV and No. V to a consideration of the cross-examination of defendant’s character witnesses, we will confine our consideration of Issues No. IV and No. V to matters arising during the cross-examination of defendant’s character witnesses. As to such cross-examination, appellant says: “First, the manner and form in which the questions were asked represented attempts by the State to prove defendant’s bad character by specific acts of misconduct.” The cases cited by appellant of Williams v. State, 250 Ala. 549, 35 So.2d 567 (1948), and Embrey v. State, 283 Ala. 110, 214 So.2d 567 (1968), involved questions asked by defendant of defendant’s own character witnesses and are inap-posite as to appellant’s fourth issue.
We agree with the proposition advanced by appellant’s fifth issue to the effect that proper cross examination of defendant’s character witness would not encompass questioning them as “to acts of misconduct .. after the commission of the offense for which the defendant was charged and convicted in this case,” as held in Williams v. State, supra, and in Ragland v. State, 178 Ala. 59, 59 So. 637 (1912) and Mitchell v. State, 14 Ala.App. 46, 70 So. 991 (1916), cited by appellant. Whether such cross-examination occurred in the instant case requires a consideration of the cross-examination of character witnesses for the defendant.
Four witnesses testified on call of the defendant to the effect that his character and general reputation were good. They were Judith Neely, Glennice Sims, Troy Williams and Kermit Hall. The fol *1026 lowing constitutes a pertinent part of the cross-examination of Judith Neely:
“Q. Did you know about him [defendant] getting arrested up here—
“MR. DRUMMOND [Defendant’s attorney]: We object to that, Your Honor.
“THE COURT: Overruled.
“Q. Did you know in that community, that he was arrested up here in Scotts-boro with assault with intent to ravish?
“MR. DRUMMOND: Judge, this is evidence of another offense and I don’t see that it has any connection with this.
“MR. DUKE: Judge, it’s to his character.
“MR. DRUMMOND: It’s highly prejudicial.
“THE COURT: Well, they’re entitled to cross-examine her to test her as to the scope of her knowledge of this Defendant. Overruled.
“Q. Were you aware of that?
“A. Yes, sir.
“Q. And you still maintain that he has this reputation?
“A. I still maintain that he has a good reputation as far as I know it.
“Q. Do you also know in regard to his reputation that he was arrested in Al-bertville in July of this year?
“MR. DRUMMOND: Same objection, same grounds.
“THE COURT: Overruled.
“A. No, sir.
“Q. You were not aware of that?
“A. No, sir.
“Q. Were you aware that he was arrested in August here in Seottsboro?
“MR. DRUMMOND: Same objection.
“THE COURT: I sustain objection to that.
“Q. The fact that if these things were true, would it change you opinion as to his reputation?
“A. In what way do you mean — What do you mean?
“Q. Well, if you were aware that these things happened involving Donald Ray Lawrence, would that change you opinion of his reputation?
“A. The charge in Albertville?
“Q. Yes, ma’am, and the charge here?
“A. I don’t know what the charge was for in Albertville.
“Q. Okay; it was for possession of a pistol and trespassing.
“MR. DRUMMOND: Judge, I believe that you sustained objection to that and we would ask that the Court exclude that.
“THE COURT: The one that I sustained was the one that occurred here in August of 1982.
“THE WITNESS: Would you repeat your question.
“Q. I had asked you whether or not knowing these facts involving Donald Lawrence would change your opinion of him?
“A. In the arrest in Albertville, no.
“Q. Then you already testified that you knew about the charge here in 1979?
“A. Yes, sir.”
The foregoing excerpt from the testimony of Mrs. Neely demonstrates that the State’s cross-examination was commenced by an inquiry as to an arrest of defendant “in Seottsboro” for an “assault with intent to ravish.” There is nothing to indicate that such incident occurred after the date of the alleged crime in the instant case. The inquiry then diverted as to some incident in Albertville “in July” of 1982, which would have been subsequent to the alleged crime in the instant case, and would not have been admissible over an objection on the ground that it called for testimony bearing on defendant’s reputation subsequent to the commission of the offense for which he was being tried. Instead of bringing this point to the attention of the court by an adequate objection, counsel for defendant said, “Same objection, same grounds,” which objection was overruled by the court. The inquiry immediately following was as to the incident “in August here in Seottsboro.” The court sustained defendant’s objection to such inquiry. It appears from the quoted excerpt from the cross-examination of the particular character witness, that the court would probably have sustained de *1027 fendant’s objection as to the incident in Albertville in July 1982, if its attention had been directed to the fact that the inquiry was as to a matter occurring subsequent to the crime charged in this case. At any rate, we are convinced that the trial court is not properly charged with error in not observing the legally anachronistic nature of the particular inquiry pertaining to the reputation of the defendant, in the absence of its having been called to the attention of the court. Furthermore, we are convinced that the ruling of the court was not harmful to defendant, as the transcript shows that the jury was informed by other evidence as to the arrest in Albertville in July 1982, of which the witness said she was not aware prior to her testimony and that knowledge thereof by the witness would not change her opinion of the defendant.
What we have stated as to the cross-examination of Mrs. Neely is largely applicable to the cross-examination of another character witness, Glennice Sims. He was also asked as to whether he had ever heard of defendant’s arrest “in Scottsboro in 1979 on a charge with assault with an intent to ravish?” Defendant’s counsel said, “Judge, we would again object,” and the court responded, “Overruled.” Promptly thereafter, counsel for the State asked the witness if he was aware that defendant “was arrested in July of this year in Albertville on a charge of trespassing and carrying a concealed weapon?” Defendant’s attorney then said, “We object,” and the court responded, “Overruled.”
On cross-examination of the other two character witnesses for the defendant, no reference was made to any conduct of the defendant subsequent to the date of the crime involved in the instant case.
VI.
Appellant’s next contention for reversal is that “the trial court erred in its holding, after a pre-trial hearing, that an alleged oral confession made by the defendant while he was held in the City Jail in police custody and in the presence of a police officer who was only 4 or 5 feet away and in plain view, was voluntary and admissible in the absence of a showing by the State that the same was voluntarily made and that the defendant was advised of his Miranda rights.” The contention pertains to the action of the trial court in overruling an oral motion of defendant to suppress the testimony of police officer Clarence Bolte as to an oral confession of defendant made to defendant’s wife while she was visiting the defendant at 1:30 P.M. on August 18, 1982, at which time defendant was confined to a cell in the Scottsboro jail on the charge of rape in the instant case, about two days after he was arrested therefor. Officer Bolte’s testimony was in pertinent part as follows:
“Q. Where was he being held?
“A. In the City Jail in a single-unit cell.
“Q. Okay; is that there adjacent to where ya’ll have your offices?
“A. No, sir, it’s around away from where our offices are.
“Q. Okay; now, did you accompany Mrs. Lawrence back there to allow her to visit with him?
“A. Yes, sir.
“Q. Did you have any particular reason for doing that, Officer Bolte?
“A. Yes, sir.
“Q. And what was that?
“A. This is a standard procedure that when someone is in custody and they have a visitor that someone goes back to the cell and stays with this person. This is for the protection of that person and the person in custody and for the protection of the personnel in the Police Department.
“Q. In other words, to keep something from being smuggled in or smuggled out or whatever, is that correct?
“A. Yes, sir.
“Q. And did you on that occasion overhear a conversation between Mr. Lawrence and his wife?
“A. Yes, sir, I did. .
“Q. Approximately how far from them were you?
“A. About four (4) to five (5) feet.
*1028 “Q. Were you in plain view or were you hiding behind the door or anything?
“A. I was right in plain view; right in front of both of them.
“Q. Okay; if you would, relate to the Court that conversation.
“A. Okay, on 8-18-82—
“Q. Let me ask you this. You have a piece of paper in your hand. Now, after you overheard this, did you reduce this to a memorandum?
“A. Yes, sir, I did.
“Q. Okay; and do you have that memorandum before you now, is that correct? “A. Yes, sir.
“Q. Okay; now, if you would then, tell us what you overheard?
“A. On 8-18-82 at 1:30 p.m., Donald Ray Lawrence’s wife came to the Police Station to talk to her husband. She was escorted back to the jail by Detective Clarence Bolte—
“Q. And that is you?
“A. That is me.
“Q. Okay; go ahead?
“A. She was shown to his cell and she started talking to him and Sgt. Bolte stood in the doorway during the visit and this is customary for someone to stay with the visitor when visiting someone in custody. This is for safety purposes. While standing in the doorway, Sgt. Bolte was only four (4) to five (5) feet from the person, Donald Ray Lawrence, and his wife and overheard their conversation. She asked him how he was doing and he replied ‘Baby, I am in a lot of trouble.’ And she replied, ‘what do you mean?’ and he stated to her ‘I signed a statement about raping that woman.’ She said ‘You couldn’t have done that’. And Donald said T done it. I done what they said I done.’ She said ‘there’s no way you could have done that because we were staying with Mother and you weren’t here that day, remember?’ And he said ‘No, I did it. I did what they said I did. I came home that night and was going to talk to you about it and you were gone. You had left and was gone a few days and I just never told you about it and I started to tell you several times but never did.’
“Q. Was there anything else during that conversation said in regard to the guilt or innocence or the evidence involved in this case?
“A. No, sir.”
It should be stated, out of fairness to all concerned, that immediately after the testimony of Officer Bolte, as quoted above, Mrs. Sheila Lawrence, defendant’s wife, testified to the effect that Officer Bolte’s testimony as to what defendant said to her on said occasion, was not correct, that defendant made no statement to her in the nature of a confession or an incriminating statement, and further that she was confident that her husband was not guilty.
As to appellant’s contention that defendant’s confession to his wife as overheard and testified to by Officer Bolte was not voluntary, reference is made to Guenther v. State, infra, in which was involved the testimony of two officers as to inculpatory remarks they heard from the front seat of an automobile in which they were riding, made by Guenther to another person whom the officers had taken into custody and who were riding in the back seat of the automobile. The following excerpt from Guenther is applicable here:
“None of the statements overheard and testified to by the officers were made to them or in answer to any questioning by them. But they were inculpatory admissions. We have held that inculpatory admissions as well as direct confessions are prima facie involuntary and inadmissible and before they can be admitted in evidence it must be shown that they were voluntarily made. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Tillison v. State, 248 Ala. 199, 27 So.2d 43. A predicate was laid to Captain Duke.
“Confessions voluntarily made by the defendant of his own free will are admissible although made while the accused is in the custody of law officers. Johnson v. State, 272 Ala. 633, 133 So.2d 53; Goldin v. State, 271 Ala. 678, 127 So.2d 375.
*1029 “The true test of voluntariness of extrajudicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confession must be excluded from the consideration of the jury as having been procured by undue influence. Womack v. State, 281 Ala. 499, 205 So.2d 579. Applying this test to the inculpatory admissions heard by the officers as appellant and Stalker talked with each other, we conclude that the trial- court did not err in admitting the evidence.” Guenther v. State, per Justice Merrill, 282 Ala. 620, 623, 213 So.2d 679, 681 (1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803 (1969).
We are cognizant of some suspicion perhaps of impropriety of prison authorities under circumstances somewhat similar to those existing in the instant case, in permitting themselves to be in a position to listen to conversations between a prisoner and his or her spouse, and it is unfortunate that the same cannot be always prevented. However, there is no contention by appellant that the officer testifying intentionally placed himself in a position that he could listen to what the two said to each other, and no contention that there was “any trickery, deception, artifice, subterfuge, or underhanded or unfair law enforcement practices” of officers or anyone acting on behalf of officers as to the conversation between appellant and his wife. The language just quoted is from Eakes v. State, per Judge Bowen, now Presiding Judge Bowen, Ala.Cr.App., 387 So.2d 855, 859 (1978), in distinguishing such case from Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).
The court was not in error in overruling defendant’s motion to suppress testimony of Officer Bolte that he heard defendant tell his wife that he had committed the rape that formed the basis of the prosecution in the instant case.
VII.
Appellant’s Issue VII raises the same point as to the admissibility of the testimony of Officer Bolte as to what defendant said to his wife while she was visiting him at the jail. The only difference to be found between Issue VI and Issue VII is that Issue VI pertains to the ruling of the trial court on the motion to suppress while Issue VII pertains to the ruling of the trial court as to the same evidence on the trial of the case. The basic sameness is clearly shown by the statement of counsel for defendant in making the objection, “We would object to the conversation and assign the same grounds that we assigned on our Motions previously ...” and the court’s ruling on the objection, “All right, on the same grounds that were assigned at the Motion and the objection is overruled.” This particular issue calls for no consideration on our part other than that which we have given it in VI above.
VIII.
As to this issue, appellant says:
“The eighth and final issue is directed to the court’s denial of the defendant’s motion for new trial. Most if not all the issues hereinbefore covered in this argument were included in the motion for a new trial. Accordingly, the denial of the defendant’s motion for a new trial is also assigned as reversible error in this case. Authorities, supra.”
We follow as to Issue VIII what we have already said as to the other issues presented by appellant.
We conclude that all issues presented by appellant must be resolved in favor of ap-pellee. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his *1030 opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.