(77 South. 995)

CLARK–PRATT COTTON MILLS CO. v. BAILEY.    (3 Div. 303.)

(Supreme Court of Alabama.    Feb. 14, 1918.)

1. MASTER AND SERVANT ☞125(8)—INJURIES TO SERVANT—INSPECTION AND REPAIRS.

Where the wabbling and vibration of a piece of shafting in a cotton mill which fell and injured an employé had existed for nine months or longer, the failure to discover it or correct it when known was negligence.

2. MASTER AND SERVANT ☞286(24) — ACTIONS FOR INJURIES—QUESTIONS FOR JURY—INSPECTION.

Where a piece of shafting and its attachments which fell and injured an employé had

been in uninterrupted use for 20 years, its bearings were worn, causing it to wabble and vibrate when in motion, and a crack within the hub of one of the pulleys attached to the shaft had probably existed for many years, it was a question for the jury whether such inspection as would have disclosed the crack should have been made, though this would have necessitated loosening the set screws of the pulley and striking the shafting with a hammer, or removing the pulley, and such extraordinary inspections were not usual in other well-managed mills.

3. MASTER AND SERVANT ☞286(24)—ACTIONS FOR INJURIES — QUESTIONS FOR JURY — INSPECTION.

While the standard of care followed by other cotton mills in the inspection of their machinery for the discovery of dangerous defects is strong evidence to show what is due care on the part of a particular employer, it is not conclusive on the jury, and the fact that in its ordinary inspections the employer followed the method customary in other mills does not as a matter of law acquit it of negligence.

4. MASTER AND SERVANT ☞107(2)—ACTIONS FOR INJURIES—UNSAFE PLACE TO WORK.

Where, if an employé's place of work was unsafe at all, it was unsafe before she began to work there, the duty violated was the nondelegable duty of furnishing a safe place in the first instance, and not the duty of maintaining the safety of the place.

5. TRIAL ☞127—ARGUMENT OF COUNSEL—PROPRIETY OF REMARKS.

Where in an employé's action for injuries it appeared that an inspector of an insurance company went over the plant and inspected its machinery when the employer began to operate it, the natural meaning of a remark of plaintiff's counsel in his closing argument that the testimony showed that the employer had protected itself against rotten machinery by having an insurance man there would seem to be that it was seeking to protect itself by having an insurance man inspect the machinery, and, if so, the remark was not objectionable.

6. TRIAL ☞127 — ARGUMENT OF COUNSEL — REFERENCE TO INSURANCE AGAINST LIABILITY.

If the remark was intended as an insinuation that defendant was insured against loss in order to encourage a verdict for plaintiff, it was improper.

7. TRIAL ☞133(2)—ARGUMENT OF COUNSEL—CURE BY ACTION OF COURT.

The remark was not so grossly improper and so highly prejudicial as to be beyond the reach of the corrective measures applied to it by the court which excluded the remark and instructed the jury not to consider it, where the jury had been qualified as to their interest in, or relation to, an insurance company, as they must have understood the significance of this qualification and of the inspections of the machinery by the insurance company's representative.

8. TRIAL ☞129—ARGUMENT OF COUNSEL—RETALIATORY REMARKS.

If such remark was a reply in kind to the argument of defendant's counsel that defendant was a little corporation owned by the citizens of a town, and that, if there was a verdict against it, the money would come out of the pockets of the citizens, defendant could not complain of its impropriety.

Appeal from Circuit Court, Autauga County; Leon McCord, Judge.

Action by Vashti Bailey against the Clark-Pratt Cotton Mills Company for damages for injuries received while engaged in their em-

ployment. Judgment for plaintiff, and defendant appeals. Affirmed.

While in the discharge of her duties as an employé of defendant cotton mill company, plaintiff was severely injured by the falling of a piece of steel shafting carrying several pullers and belts from its hangers overhead. There were four counts to the complaint. Counts 1, 2, and A, are framed under subdivision 1 of section 3910, Code 1907, and the charge is that said shafting was defective or insecurely fastened or hung. Count 3 is framed under subdivision 2 of the same statute, and charges that defendant's superintendent was negligent in causing plaintiff to work in dangerous proximity to said shafting when he knew or should have known by the exercise of reasonable diligence that said shafting was liable to fall and injure plaintiff. Count 4 is based on a breach of the common-law duty of defendant in negligently failing to provide for plaintiff a reasonably safe place in which to do her work. The court refused the general affirmative charge for defendant as to counts 1, A, and 4, and also refused to defendant the following charge:

Defendant was under no duty to make any other inspection of the shaft than was usual or customary in well-regulated cotton mills; and if the jury believed such inspection was made, then they must find for defendant.

There was verdict and judgment for plaintiff in the sum of $4,500, and defendant moved for a new trial on the grounds that the verdict was against the overwhelming weight of the evidence, and was excessive in amount. This motion was overruled, and errors are assigned upon the refusal of the instruction, and the denial of a new trial.

Rushton, Williams & Crenshaw, of Montgomery, and Eugene Ballard, of Prattville, for appellant. Hill, Hill, Whiting & Stern, of Montgomery, for appellee.

SOMERVILLE, J. The testimony of plaintiff's witness White tends to establish four defects in the structure or operation of the shafting, by the fall of which plaintiff was injured, which may have caused its fall, or materially contributed thereto: (1) There was an old crack in the shafting where it broke, within the hub of one of the pulleys, which had probably existed for many years; (2) the shafting was not hung properly, being out of line about half an inch; (3) the bearings supporting the shafting were worn about three-sixteenths of an inch, causing it to jump, wabble, and vibrate, and tending to crystallize or make brittle the shafting at that point by excessive friction; and (4) in the worn condition of the bearings; the shafting needed, and should have had, another hanger in the middle.

So far as defective conditions and their causation of the injury are concerned, these were clearly questions for the jury. But it is earnestly insisted that the evidence has no tendency to show that defendant or its superintendent was negligent with respect to the origin of these defects, or as to their seasonable discovery and correction.

[1] The machinery in question had been in use in the mills for 20 years. The wabbling and vibration of the shafting attracted the attention of the witness Gobel, the overseer of the cardroom, when he first went to work about nine months before plaintiff's injury, and he called the attention of three successive master mechanics to that condition, but nothing was done to correct it. Under the evidence, we think the jury could have rationally inferred that this defective condition contributed proximately to the breaking and falling of the shafting, either by causing the crack in the shafting originally, or else by acting unfavorably upon a dangerous crack of extraneous origin. And if it existed, as several of plaintiff's witnesses testified it did, for nine months, or much longer, it carried on its face the suggestion of latent danger, and the failure either to discover it, or to correct it when known, supplied a basis for the ascription of negligence to defendant under any one of the several counts of the complaint.

[2] All the testimony shows that ordinary inspections of the machinery, such as are usual in well-regulated cotton mills, and which were frequently made in the defendant mills by the superintendent and by competent machinists, would not and could not disclose the existence of the crack in the shafting which was within the hub of the pulley where one of its set screws penetrated.

Plaintiff's witness White testified that the crack would have been discovered by loosing the set screws of the pulley, and striking the shafting with a hammer; and in this he was corroborated by defendant's witness Pierson, the superintendent of the mills. All the witnesses agree that the crack could not have been discovered except by the method stated, or by removing the pulley and closely inspecting the surface of the shafting.

Defendant's witnesses all agree, and there seems to be no denial, that such inspections of shaftings for possible defects concealed by pulley hubs are not usual, and are not made in other well and carefully managed mills; and it seems to be conceded that no such inspection has ever been made by defendant.

The duty of extraordinary inspections of machinery for hidden defects, which, if existent, might imperil the safety of employés, was under consideration in the case of Campbell v. L. & N. R. R. Co., 109 Ala. 520, 19 South. 975; Id., 97 Ala. 147, 12 South. 574. On the first appeal it was held that there was nothing in the evidence to raise the duty on defendant's part to inspect certain brake rods by taking them out and looking for hidden defects, that being an extraordinary inspection, and obviously impracticable as a

part of the regular and ordinary inspection of cars. But on the second appeal, after reviewing the language of the former opinion, it was said:

"Most obviously this language was never intended to affirm that cars are not required to be taken to the shops, and hidden appliances examined, when from continued wear, or other cause, reasonable prudence and caution require that it should be done. The impracticability of a requirement such as was considered in the above extracts does not attach to the performance of the duty just mentioned; and we proceeded, immediately after the remarks just quoted, to point out that there was no evidence of the length of time the car had been in use, and the defect in the brake had existed, from which the jury could have inferred an exigency calling forth the extraordinary duty mentioned."

The court held on the last appeal that, in view of the worn and impaired condition of the car, and the age of the defect in the rod, it was for the jury to determine whether the defendant had exercised reasonable care and caution under the circumstances.

We cannot distinguish the case at bar from the Campbell Case, in the application of the principle stated. Here the 20 years' uninterrupted use of this shafting and its attachments, the worn condition of its bearings, its wabbly motion, and the antiquity of the crack itself, may well have invoked the duty of an extraordinary inspection, and we think that question was, under the circumstances shown, properly left to the jury. Fuller v. Lanett Works, 190 Ala. 208, 67 South. 378.

[3] It is to be observed that, while the standard of care followed by other cotton mills in the inspection of their machinery for the discovery of dangerous defects is strong evidence to show what is due care in that regard, yet it is not conclusive upon the jury. And the fact that in its ordinary inspections defendant followed the method customary in other mills does not, as a matter of law, acquit it of negligence in cases such as this. Caldwell-Watson Co. v. Watson, 183 Ala. 326, 62 South. 859.

In the light of what we have said above, the special instruction requested by defendant as to the duty of inspection was properly refused.

[4] The question of defendant's liability for not maintaining the safety of the place in which plaintiff was working does not arise; for, if the place was unsafe at all, it was so before plaintiff began to work there, and the duty violated was the nondelegable duty of furnishing a safe place in the first instance.

In view of what we have said of the evidence and its tendencies, we think the trial judge was not in error in refusing to grant a new trial because of an overwhelming weight of evidence against the verdict.

[5-8] The bill of exceptions shows that the jury were qualified by the court as to their interest in or relation to the Travelers' Insurance Company, and that an inspector of that company went over the plant and inspected its machinery when its present management began to operate it in February, 1916. During the closing argument of plaintiff's counsel he said:

"And the testimony tells you that they have protected themselves against this rotten machinery by having an insurance man there."

On motion of defendant's counsel, this remark was ruled out, and the jury were instructed not to consider it. It is insisted, nevertheless, that this remark was so grossly prejudicial in its suggestion, and its effect so ineradicable, that a new trial should have been granted.

The import of the language used by counsel is not clear. Its natural meaning would seem to be that defendant was seeking to protect itself by having an insurance man there to inspect the machinery. If so, the remark can scarcely be called objectionable. If, on the other hand, counsel intended to encourage a verdict for defendant by the insinuation that defendant was protected against loss by an accident insurance policy, the remark was clearly improper. Yet the jury must, from the beginning, have clearly understood the significance of their special qualification as to the insurance company, and of the inspections made by its representative for the detection of defective machinery; and under these conditions we cannot affirm that the allusion objected to was so grossly improper and so highly prejudicial as to have been beyond the reach of the corrective measures applied to it by the court. B. R., L. & P. Co. v. Gonzales, 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543.

Moreover, if it be regarded, as urged by plaintiff's counsel, as a reply in kind to the argument of defendant's counsel (viz. that defendant is a little corporation owned by citizens of Prattville, and if there is a verdict against it the money will come out of the pockets of your citizens), defendant cannot with good grace complain of its impropriety.

Finally, it is argued with much force that the award of $4,500 as compensatory damages is greatly excessive, in view of the limited injuries exhibited by plaintiff, and the failure of the evidence to show that they are permanent in character. As we have often remarked before, this verdict is larger than our own view of the evidence would prompt us to award, if we were sitting as jurors. We must consider, however, that plaintiff was personally before the trial court, and the extent and possible permanency of her injuries could be better judged there than here. On the whole, we do not feel clearly justified in disturbing the verdict and judgment as rendered and sustained below.

Finding no error in the record, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.