48 So.2d 781

### GENERAL FOODS CORP. v. CONEY.
### 3 Div. 918.

Court of Appeals of Alabama.

Oct. 31, 1950.

Rushton, Stakely & Johnston, of Montgomery, for appellant.

Azar & Campbell, of Montgomery, for appellee.

**HARWOOD, Judge.**

In the court below the plaintiff secured a verdict and judgment. The suit grew out of a collision between plaintiff's automobile and one owned by the defendant.

The sole question presented on review in the appeal perfected by the defendant below relates to whether the collision occurred at a time when defendant's agent and servant was acting within the line and scope of his duties as agent for the defendant.

Indisputably the evidence shows that the automobile involved in the collision with plaintiff's car belonged to the defendant, and further that the driver was an employee of the defendant. Clearly this created an administrative presumption to the effect that the defendant's agent was acting within the line and scope of his duties at the time of the collision. Craft v. Koonce, 237 Ala. 552, 187 So. 730. The appellant contends that it fully met the burden imposed on it by this administrative presumption by evidence it introduced, in that such evidence without dispute rebutted and overcame the administrative presumption and therefore the court erred in refusing defendant's written request for the affirmative charge, and in denying its motion for a new trial.

We will set forth only the tendencies of the evidence bearing upon the issues raised by appellant's brief, namely, that evidence which sheds light on the question of respondent superior.

The evidence introduced by the defendant consisted of the deposition of Mr.

C. L. Davis, the driver of the defendant's automobile at the time of the collision.

Mr. Davis testified that at the time of this collision he was employed by the appellant company as a salesman. His usual working hours were from 8:00 A. M. till 5:00 P. M. He lived in Tuscaloosa, and his territory included at least fifteen counties surrounding Tuscaloosa. He called on grocery stores, wholesalers and jobbers in his territory. Depending on the line of goods then being pushed he would carry samples of such items in the automobile with him. The automobile was furnished to him by the appellant.

As to the method followed in arranging his work schedule Davis testified as follows:

"Q. Was your program pretty well outlined by General Foods Corporation as to what city you would work in one week or what county you would work? "A. They asked us for an advance route sheet. In other words, I could tell the town I would be in on a certain day and the hotel I would be in that night, so they could reach us by wire or phone or air mail. The exact stores; no. They found that out from the daily report but they did know ahead of time the exact town I would work and where I would be at night.

"Q. Did you tell them as much as a week ahead of time where you would be the following week? "A. What hotel I would be in; yes.

"Q. And what towns you would work and the dates? "A. Yes.

"Q. Did they ever change your route and tell you to go to some other town instead of the route you had outlined? "A. Yes. Sometimes we would have something come up that would interrupt our planned route. Maybe a change in price or there would be something come up that had to be attended to and we might have to cut out across the country and call on jobbers only and that would disrupt my program."

On the day in question Davis had worked the Bessemer area. After he "got through with work" he had gone to his brother's home in Bessemer where he had dinner and visited until around 10:30 or 11:00 P. M. He then started for his home in Tuscaloosa. The collision occurred on the highway at a point about midway between these two cities.

Davis was to begin a two week vacation on the day following the collision.

The general rule is that an employee using an automobile whether belonging to his employer or to himself, in going to and from his place of work, is not at such times regarded as engaged in work for his employer, but is acting solely for his own purposes. Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So.2d 490.

However, where a master places at the disposal of his servant an automobile to be used by the servant in going to and from his work, and such transportation arrangement is beneficial to both, the relation of master and servant continues while the automobile is used for such purposes. Blair v. Greene, 247 Ala. 104, 22 So.2d 834; Blashfield's Cyc. of Automobile Law and Practice, Perm. Ed. Vol. 5, Section 3041.

The undisputed evidence shows that Davis, the servant of the appellant, was furnished the automobile by the appellant in order to facilitate his employment as salesman for the appellant. Davis made his home in Tuscaloosa. His territory included at least fifteen counties surrounding Tuscaloosa. The appellant knew of Davis' route for a week in advance, and the exact place he would be each night. Davis had worked in his proper territory the day of the collision. True he had had dinner with his brother after completing his actual sales work for the day. He was returning to his home in Tuscaloosa at the time of the collision, and was to begin his vacation the next day. Under Davis' testimony the appellant must have known of and approved this itinerary.

Clearly a question of fact as to whether Davis was acting within the line and scope of his agency was presented under the above evidence, and properly submitted to the jury.

We think the evidence abundant in its tendencies authorizing the jury to infer that Davis was about his master's business at the time of the collision. It would be illogical for the jury to infer that Davis should have left the automobile in Bessemer at the completion of his sales rounds. It was beneficial to the master that the automobile be returned to Davis' home and headquarters, particularly since he was to commence his vacation the next day. Since Davis' itinerary was known to the company a week in advance the jury was fully warranted in finding that it was a part of Davis' employment, and his duty, to proceed from Bessemer to Tuscaloosa on the night in question.

Evidence to rebut the administrative presumption of agency created and existing under appellee's evidence to entitle appellant to the general charge, should be free of circumstances tending to bring it into doubt and suspicion. If it was not clear and convincing, the defendant's responsibility was for the jury, although the defendant's evidence was undisputed. Deaton Truck Lines v. Tillman, 33 Ala. App. 143, 30 So.2d 584.

Appellant's evidence consisted solely of the testimony of Davis. He denied he had been drinking at the time of the collision, or in fact that he ever drank at all.

He testified that the highway at the scene of the collision was curving and hilly. He further testified that after the collision he rode into Tuscaloosa with the appellee in appellee's automobile, and that he and appellee agreed to settle their claims with each other.

On the other hand the appellee testified that Davis was so drunk at the time of the collision that he had to rouse him up to talk to him. Two highway patrolmen who arrived at the scene about an hour after the collision each testified that Davis' breath smelled of alcohol when they interviewed him.

Appellee and the highway patrolmen testified that the highway was level and straight for a mile at the scene of the collision.

The appellee further testified that Davis did not ride into Tuscaloosa with him after the collision, but in fact rode in with the highway patrolmen. Both patrolmen gave testimony to this same effect.

This contradiction of Davis' testimony, if believed by the jury under the required rule, seriously questions the credibility of his entire testimony. It is apparent from the verdict that the jury accepted as true the testimony of the appellee and the two highway patrolmen. The jury, in our opinion, would have been justified in disregarding Davis' testimony entirely on the theory of falsus in uno, falsus in omnibus. In this aspect the administrative presumption established by appellee's evidence remains intact and entirely unrebutted. This is but an additional conclusion compelling an affirmance of this cause.

Affirmed.