165 So.2d 731

ATLANTA LIFE INSURANCE COMPANY et al.

v.

Frances STANLEY et al.

6 Div. 928–929.

Supreme Court of Alabama.

June 18, 1964.

---

Arthur D. Shores, Birmingham, for Atlanta Life Ins. Co.

Mead, Norman & Fitzpatrick, Birmingham, for McCoy.

Jenkins & Cole, Birmingham, for appellees.

HARWOOD, Justice.

This appeal involves two cases which were consolidated for trial in the court below. Individual suits were brought by Mrs. Frances Stanley, and by her husband, Garvin B. Stanley, against these defendants jointly. They claimed damages for injuries sustained in an automobile accident.

As originally filed the suits included David Eugene Williams as a co-defendant. After amendments in each suit, however, Williams was stricken as a defendant. The issue in each suit was submitted to the jury on a single count alleging negligence. The asserted liability of the defendant, Atlanta Life Insurance Company, was upon the theory of respondeat superior

The jury returned the verdict in favor of Mrs. Stanley in the sum of $10,000, and a verdict in favor of Mr. Stanley in the sum of $5,000. Judgments were entered pursuant to the verdicts.

The defendants filed their respective motions for new trials, asserting a number of grounds. These motions for new trials being overruled, each appellant has perfected an appeal to this court upon the consolidated record.

Evidence presented below tended to show that at a point some ten miles west of Pell City on the night of 14 March 1959, a pickup truck being driven by David Eugene Williams approached the appellee's automobile from the rear. Visibility was poor due to the fact that it was raining hard at the time. Williams attemped to pass the Stanley car under the conditions aforesaid. In attempting to return to his lane in the rear of the Stanley car, the two vehicles hooked bumpers, and thus proceeded down the highway for approximately 50 feet before they came to a halt. Mrs. Stanley was shaken about some in this collision, but testified she was not hurt.

Mr. and Mrs. Stanley got out of their automobile to inspect the situation. Mrs. Stanley became faint and Mr. Stanley helped her back into the front seat of their automobile, and administered ammonia.

The evidence showed that Mrs. Stanley fainted easily and the Stanleys carried a bottle of ammonia in their car for such an event.

Frank Pope was riding in the pickup truck with Williams at the time of this collision. He sustained some injury when his head struck and broke the windshield of the pickup truck, but this injury did not prevent his attempting to render assistance. With the aid of a flashlight given to him by Mr. Stanley, Pope signalled oncoming motor vehicles around the Stanley automobile and the Williams' pickup truck.

The evidence tended to show that the headlights of both vehicles were burning during the time they were stopped on the highway, and that they were in their right lane in relation to the direction they were proceeding and that there was sufficient room for vehicles to pass them in the opposite lane. Pope testified that he signalled McCoy's car with the flashlight just prior to his running into the stopped vehicles, and a state trooper who investigated the collision, testified that the headlights were still burning on all three vehicles at the time he arrived at the scene, but that the tail lights on the pickup truck were broken and not burning.

As a result of this second collision, Mrs. Stanley was thrown against the steering wheel and was generally jerked about. She fainted again after the second collision. Mr. Stanley drove her to the Citizens Hospital in Talladega, where she remained for two weeks. Her injuries were diagnosed as a concussion; acute sprain of the cervical spine, and multiple contusions of legs, arms, and chest.

Upon her return to her home in Birmingham, Mrs. Stanley later consulted Dr. Paul W. Shannon, an orthopedic surgeon of that city. Dr. Shannon saw Mrs. Stanley at his office where she received heat and traction treatments about twice a week, over a period of some 15 to 20 visits. On 20 June 1961, she returned complaining of the same condition. He hospitalized her from 1 July 1961 to 9 July 1961, giving her similar treatments to those she received in his office, but in a more intense manner. He saw her approximately ten times after this last hospitalization. The condition he found was one likely to result from an accident, and was also likely to cause pain, and will most likely be permanent. She will continue to have to use the neck halter traction he prescribed on an indefinite time basis. Mrs. Stanley testified she had used the neck traction halter up to the time of the trial.

The medical bills in connection with Mrs. Stanley's injuries have totaled $1,189.-45 at the time of the trial.

As to the accident itself, the appellant, McCoy, testified that as he was driving east

on Highway 78, on the night in question, three or four cars were in front of him, about two blocks distant, just before reaching the scene of the accident. He watched their lights as they proceeded down the road, and they went around the stationary pickup truck and the automobile occupied by the plaintiffs. He was driving about 20 miles per hour when he saw a pickup truck about 50 feet away. When he was about a car length away from the truck he realized that it was not moving and he applied his brakes but was unable to stop before hitting the rear of the truck. McCoy testified he did not remember seeing the lights on in the automobile or the truck, nor did he see the witness Pope waving his flashlight. McCoy has only one eye, is elderly, and has had a stroke since this accident.

Counsel for both appellants argue that the evidence is insufficient in the required degree of proof of negligence to sustain the verdict and judgment. We do not agree. In view of the testimony of the state trooper and other witnesses that the highway was 28 feet wide and that the Stanley automobile and the pickup truck were well over to the right of the highway; that several other automobiles had driven around the two stopped vehicles; that the headlights on the two stopped vehicles were burning, and Pope attempting to flag approaching cars around the two stopped vehicles and that he did in fact attempt to flag the appellant, McCoy, around the two stopped vehicles, raises a question of fact as to McCoy's negligence under the circumstances, which was solely within the province of the jury to resolve. We conclude there is ample proof to the required degree to support the jury's conclusion, as evidenced by their verdict, that McCoy was guilty of negligence on the occasion in question.

Counsel for the appellant, the Atlanta Life Insurance Company, argues that the evidence presented was insufficient to show that McCoy, at the time of the accident, was engaged in the business of the Atlanta Life Insurance Company.

In this connection the evidence tends to show that for some 23 years McCoy had been employed as a debit man by the Atlanta Life Insurance Company. This was his sole occupation. He sold life insurance and collected premiums. McCoy worked out of his home in Pell City, with no regular schedule. McCoy owned two automobiles, and the automobile he was driving at the time of the accident was his business car, for which the insurance company paid him $5.00 per week toward its operation. On the occasion in question he had in his car an insurance book, policy cards, receipt book, rate book, and application book, and some premium collections.

While McCoy's testimony as to the area of his debit was somewhat hazy, in his answer to a prior deposition which was received in evidence without objection, he had stated that he had customers in Pell City and that his debit extended over toward Leeds.

In their answer to interrogations propounded to them, the appellant, Atlanta Life Insurance Company, stated that McCoy's debit covered the area of Leeds, Alabama, extending to Pell City, and covered Pell City.

On the night in question, McCoy testified that he had been working his debit in Leeds, and when he had completed this work, he started home around 5 P.M. However, because of the rain he went to a cafe where he remained for a couple of hours. He purchased some sandwiches and eventually started for his home in Pell City. He maintained that he had completed his work at the time he went to the cafe.

Admittedly, the general rule is that an employee using an automobile whether belonging to his employer or himself, in going to and from his place of work, is not at such times regarded as engaged in work for his employer, but is acting solely for his own purpose. Smith v. Brown-Service Ins. Co., 250 Ala. 613, 35 So.2d 490; General Foods Corp. v. Coney, 35 Ala.App. 492, 48 So.2d 781. However, where a

master bears a part of the expense of an automobile used by his servant in going to and from his work and in and about his employment, and such transportation arrangement is beneficial to both, the relation of master and servant continues while the automobile is used for such purposes. General Foods Corp. v. Coney, supra, and cases cited therein. The evidence below tends to show that McCoy was in his debit area; that he had worked that part of his debit in Leeds, Alabama, on the day in question; he had collected premiums due Atlanta Life Insurance Company on that day, and had these monies with him at the time of the accident; he worked out of his home and was on his way back to his home at the time of the accident. It was beneficial to his master that McCoy returned the premium collections to his home and headquarters.

Under these facts the question as to whether McCoy was in and about the business of the Atlanta Life Insurance Company at the time of the accident, was for the jury. General Foods Corp. v. Coney, supra; Nelson v. Johnson, 264 Ala. 422, 88 So.2d 358; Luquire Funeral Homes Ins. v. Turner, 235 Ala. 305, 178 So. 536.

■ The Atlanta Life Insurance Company has also assigned as error the refusal of two charges requested by it in writing, Charge No. 1 and Charge No. 2. Neither charge is hypothesized upon the jury being reasonably satisfied from the evidence. Refused Charge No. 1 is additionally faulty in instructing the jury that they "must be convinced" and likewise is refused Charge No. 2 for its phraseology, "if you believe that the defendant McCoy had ended his activities for the defendant * * *." The correct phraseology for charges in civil cases is that the jury "be reasonably satisfied from the evidence." See Ala. Digest, Trial, Vol. 18A, ☞234(3), 234(4), 237(3), for innumerable authorities. No error resulted from the refusal of these two charges.

■ Counsel for appellant McCoy argues that error infects the judgment because of prejudicial argument by counsel for appellees in addressing the jury.

In considering this argument, we must at the outset observe that it was framed with an unusual background.

In his opening statement to the jury, counsel for appellant stated that he would tell the jury that Alabama Farm Bureau Mutual Liability Insurance Company was a liability insurer of McCoy's automobile, and he expected the evidence to so show. Appellee's (plaintiff's) objection to this statement was sustained. However, during McCoy's testimony, evidence that he had such coverage was elicited without objection, McCoy testifying: "My Policy, if I have the right understanding, it is five-ten; it pays five for a person having one accident and up to ten thousand for more than one accident."

Frequently during the trial McCoy was referred to by counsel as "ole M. C.," his own counsel so designating some nine times, and once as "poor ole M. C."

Under these conditions counsel for appellees made the following statements in his final argument:

"On the liability side of this case, let me say this. I, and these people don't either, do not wish to hurt, as they say, ole M. C. We don't wish to hurt him. I do not, and these people do not wish to in anywise do anything against him personally. We want a judgment in this case, because we think under the evidence the judgment is justified. He has a five-ten policy. There can be awarded in the case $5,000.00 in Mrs. Stanley's case, and can be awarded $5,000.00 in Mr. Stanley's case.

*　*　*　*　*　*

"Let's put it to you this way. If you award a verdict of $5,000.00 in Mr. Stanley's case, and $5,000.00 in Mrs. Stanley's case, that will be satisfactory. Actually, here is the proposition: If

you award a verdict against both of these people, against both the Atlanta Life and McCoy, we can collect it, and it can be collected from either party, and I mean from Atlanta Life too. And I might go further and say, if a verdict in any size, a sizeable figure, and by sizeable, I mean over $5,000.00 in each case is awarded, then we can collect all of it from the Atlanta Life Insurance Company, and that is the law."

Counsel for appellant in brief states that in order to best serve his client it appeared best to show that there was some diversity of interest between the two defendants, and that the Atlanta Life Insurance Company would not be paying the entire verdict, but that there was an interest standing behind McCoy which would have to share in the burden of paying a judgment.

Counsel for appellees argue that the disclosure of McCoy's insurance by McCoy himself was a tactical move by McCoy's counsel to keep the verdict within the limits of McCoy's insurance coverage.

Our conclusion, however, must be reached on the record before us, and not upon the motives directing the trial procedure of the parties.

The remarks of appellee's counsel above set out are not erroneous statements of the principles of law referred to.

The matter of McCoy's insurance, first interjected into evidence by his attorney, is so thoroughly interwoven into the fabric of the entire evidence as to be inseparable therefrom. The argument as to its effect was invited, and not improper under the circumstances. Smith v. Baggett, 218 Ala. 227, 118 So. 283; Clark-Pratt Cotton Mills Co. v. Bailey, 201 Ala. 333, 77 So. 995.

■ Nor do we consider the reference in the argument to "poor ole M. C." an unwarranted appeal to class or economic prejudices. The appellant's counsel had frequently referred to "ole M. C." and even on one occasion to "poor ole M. C."

■ Arguments of counsel provoked or invited by opposing counsel furnish no justifiable ground of complaint or corrective action. St. Clair County v. Bukacek, 272 Ala. 323, 131 So.2d 683.

■ Nor do we consider that bias or prejudice necessitating a reversal is evidenced by an inquiry of the jury, when returned to the courtroom during their deliberation, as to whether: "We can specify that one insurance company would be liable for roughly one-third and the other two-thirds."

The court thereupon at length, clearly and correctly instructed the jury to the effect that they could return a verdict in a single sum only in each case; that the defendants were Atlanta Life Insurance Company, and M. C. McCoy, and the verdict could only be against these defendants if the jury so found.

Further, while an exception was reserved to a later portion of the court's instructions during this incident, we do not find that any exception was taken to this portion of the instructions.

We come now to a consideration of the sufficiency of the evidence to support the damages awarded.

Mrs. Stanley claimed damages for personal injuries; for loss of time from her employment with resultant loss of wages; and for physical pain and mental suffering.

Her physical injuries were substantial. There was ample evidence from which the jury could infer that her injuries would induce pain and suffering, and that her condition in regard to pain would likely be permanent. There was also proof as to loss of wages of $275.00 due to absence from her work because of injuries.

■ The amount of damages for physical injury and pain and suffering resulting therefrom must, because of the inexact modes of measurement therefor, be left largely to the sound discretion of the jury, subject to revision by the court only

where the jury has clearly abused its discretion. See 7A Ala. Dig., Damages, ☞ 95 and 96, for innumerable authorities. And the refusal of the trial judge to disturb the verdict in the aspect of the damages awarded strengthens the determination of the award as found by the jury. A reviewing court is reluctant to substitute its judgment in these premises for that of the jury and trial court who saw and heard the witnesses. Montgomery City Lines v. Davis, 261 Ala. 491, 74 So.2d 923, and authorities therein cited.

 We find no basis for concluding that the damages awarded Mrs. Stanley were the result of bias, prejudice, or passion, and no basis justifying our interference with the verdict and judgment awarded her.

Counsel for appellant McCoy argues that the evidence is insufficient to support a substantial portion of the damages awarded Mr. Stanley.

In his complaint, Mr. Stanley claimed damages for medical expenses incurred in and about the treatment of his wife and for which he was liable; damages for injury to his automobile; damages for loss of services of his wife; and damages for physical injury and pain and suffering.

The evidence is uncontradicted that Mr. Stanley has incurred medical and hospital expenses of $1,186.45 in the treatment of Mrs. Stanley's injuries. The evidence also shows that the damage to his automobile was $250. These total damages of $1,436.45 are established by the evidence.

It is our conclusion that so far as damages for personal injuries are concerned the evidence offered by Mr. Stanley in this respect was insufficient to support an award.

However, Mr. Stanley, as before noted, also claimed damages for loss of his wife's services.

In Long v. Booe, 106 Ala. 570, 17 So. 716, this court equated the loss of the services of a wife to the loss of consortium in the following language:

" 'The word "service" has come to us in this connection from the times in which the action originated, and it implies whatever of aid, assistance, comfort, and society the wife would be expected to render or to bestow upon her husband, under the circumstances and in the condition in which they may be placed, whatever those may be. That services in the ordinary sense were not rendered at all would be immaterial and irrevelant, except as the fact might, under some circumstances, tend to show a want of conjugal regard and affection, and thereby tend to mitigate the damages.' Cooley, Torts, p. 226. And to like effect is the language of the Supreme Court of Massachusetts: 'A husband is not master of his wife, and can maintain no action for the loss of her services as his servant. His interest is expressed by the word "*consortium*,"—the right to the conjugal fellowship of the wife, to her company, co-operation and aid in every conjugal relation. \* \* \*' "

 It is well settled under our decisions that where the wife is wrongfully injured by a third party, the wife may sue for personal injuries to herself, and the husband may maintain an action for consequential damages, not for the injury, but for damages resulting to him from the injuries to his wife, such as the cost of caring for her and for the loss of her services. Graham v. Central of Georgia Ry. Co., 217 Ala. 658, 117 So. 286, and cases cited.

 Where such actions and damages are allowable, the nature of the subject does not admit of direct proof of value, and when the fact of loss of society is established by evidence, the assessment of reasonable compensation therefor must necessarily be left to the sound discretion of the jury. 27 Am. Jur., Husband and Wife, Sec. 511.

The record shows that Mrs. Stanley was twice hospitalized as a result of her injuries. The first time for about two weeks

in the Talladega hospital, and the second time for some nine days in Birmingham. This, in addition to some 15 to 20 visits to Dr. Shannon between her hospitalizations, and some 10 more visits to Dr. Shannon after her last stay in the hospital. She has had to use a neck halter over a long period of time, and such use will continue for an indefinite time in the future.

All of the above was ample evidence from which the jury could have concluded that Mr. Stanley had suffered a substantial loss of his wife's services.

The evidence showed that Mr. Stanley had suffered some $1,436.45 in actual damages, i. e., medical bills and damage to his automobile. This leaves some $3,563.55 possibly attributable to damages for loss of his wife's services.

Verdicts are presumed to be correct and no ground is more closely scrutinized or more rigidly limited than that the verdict is unsupported by the evidence, and all reasonable intendments are indulged in its favor. Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 114 So.2d 453; Montgomery City Lines v. Davis, 261 Ala. 491, 74 So.2d 923. Further, the propriety of the amount of damages was reviewed by the trial court in the motion for a new trial, and the trial court's refusal to disturb the verdict strengthened its presumption of correctness. An appellate court is reluctant to substitute its judgment for that of the jury and the trial court. Montgomery City Lines v. Davis, supra; Southern Railway Co. v. Smith, 268 Ala. 235, 105 So.2d 705; 2A Ala. Dig., Appeal and Error, ☜1004(1) for numerous other authorities.

We are unwilling to disturb the judgment in the aspect of the amount of damages awarded Mr. Stanley.

The judgment in the case of Mrs. Frances Stanley v. Atlanta Life Insurance Company and M. C. McCoy (Our docket, 6 Div. 928), and the case of Garvin E. Stanley v. Atlanta Life Insurance Company and M. C. McCoy (Our docket 6 Div. 929) are each free of error probably injuriously affecting the substantial rights of the respective appellants, and are hereby ordered affirmed.

6 Div. 928—Affirmed.

6 Div. 929—Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.