213 So.2d 679

**Carl F. GUENTHER**

**v.**

**STATE of Alabama.**

**3 Div. 352.**

Supreme Court of Alabama.

July 18, 1968.

Rehearing Denied Aug. 29, 1968.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

Geo. B. Azar, Azar, Campbell & Azar, Montgomery, for appellant.

MERRILL, Justice.

Appellant was convicted of robbery and sentenced to 25 years in the penitentiary. The offense occurred in 1962. Appellant, then 17 years of age, was first sent to the Juvenile Court, where it was later decided that he should be tried as an adult. That ruling was reviewed and affirmed by this court in Guenther v. State, 279 Ala. 596, 188 So.2d 594. Then, in January, 1965, appellant was convicted of burglary and received a sentence of 2 to 10 years. His trial on the present charge was held on May 29, 1967.

The victim of the robbery, Thomas C. Capell, was parked in front of Williams School in Montgomery, where his wife taught, about 9:20 P.M. on October 10, 1962. He was waiting to take his wife home. Two young men walked up to his car, pointed their pistols at him, got inside the car and told him they wanted to go for a ride and they would guarantee his safety if he cooperated with them. He offered them the money he had in his pocket and his automobile. They required him to drive off on a side road and then one of them hit him in the head and both of them began to beat him. After he had been severely beaten, they took his money and his outer clothing and drove off in his car, leaving him lying in the road. He testified that appellant was one of the men who had robbed him.

Capell crawled to a house and called for help. He was taken to a hospital where approximately 200 stitches were taken in his scalp.

Sometime later, the Sheriff of Montgomery County was notified that Capell's automobile had been found in Pulaski, Tennessee, and the two occupants were being held in custody. About a week after the robbery, Captain J. H. Duke and Detective J. C. McKenzie went to Pulaski to return the two occupants, appellant and one Charles Stalker, to Montgomery. The Pulaski police returned the automobile and Capell's wallet to Capell.

The first point raised concerns the admissibility of some statements which the officers overheard the prisoners make as they were riding in an automobile on the way back to Montgomery. The two officers were on the front seat and the prisoners on the rear seat. Detective McKenzie testified that before they left Tennessee, the prisoners were told that the officers would talk to them and question them when they all returned to Montgomery, and both he and Captain Duke testified that they were not questioned during the entire trip.

Captain Duke testified that appellant asked him and McKenzie what the penalty for robbery was in Alabama and he told him "from ten years to electrocution." Appellant admits that he asked the question. Captain Duke testified that appellant and Stalker began dicussing the case between themselves, that he overheard them say that after they beat the man and took his car they went to the bus station, got their suitcases and drove north and that they were arrested in Pulaski, Tennessee. Duke testified that appellant did not admit or deny to him that he was implicated in the crime because he did not question appellant, but that they did talk freely and voluntarily among themselves.

Appellant brought out on cross examination of Duke that Stalker had pleaded guilty and received a sentence of 15 years.

Appellant, who took the stand in his own behalf, testified that he heard what the officers said about the conversations he and Stalker had, and he denied that they occurred, but at no time did he claim or testify that he or Stalker were questioned by the officers while they were being transported from Pulaski to Montgomery. He

testified that on the same day he was arrested in Pulaski, he called his mother and "she got me an attorney" there.

■ None of the statements overheard and testified to by the officers were made to them or in answer to any questioning by them. But they were inculpatory admissions. We have held that inculpatory admissions as well as direct confessions are prima facie involuntary and inadmissible, and before they can be admitted in evidence it must be shown that they were voluntarily made. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Tillison v. State, 248 Ala. 199, 27 So.2d 43. A predicate was laid to Captain Duke.

■ Confessions voluntarily made by the defendant of his own free will are admissible although made while the accused is in the custody of law officers. Johnson v. State, 272 Ala. 633, 133 So.2d 53; Goldin v. State, 271 Ala. 678, 127 So.2d 375.

■ The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence. Womack v. State, 281 Ala. 499, 205 So.2d 579. Applying this test to the inculpatory admissions overheard by the officers as appellant and Stalker talked with each other, we conclude that the trial court did not err in admitting the evidence.

Appellant complains that the court erred in permitting a pistol to be introduced in evidence. The pistol was turned over to Detective McKenzie by the Pulaski police and was identified to him as having been taken from appellant's luggage. On cross examination, McKenzie was asked if two pistols were turned over to him by the Pulaski police and he said that he did receive two pistols. He stated that he did not know of his personal knowledge where the pistols "came from." He had previously testified that he had heard appellant and Stalker say that they had purchased two pistols in Atlanta and that appellant said that he was the first one who hit Capell over the head. He also stated that he found a letter from the Post Office Department to Mr. Capell in Guenther's luggage.

Both the pistol and the testimony about finding the letter were admitted into evidence without objection.

Appellant contends that the evidence of the pistol and the letter coming from his luggage was inadmissible because it was the result of an illegal search and seizure.

■ The answer to this contention is that the right to protection against an unlawful search is personal, and a defendant in a criminal case who denies any proprietory or possessory interest in seized property has no standing to object to the method of seizure. Aldridge v. State, 278 Ala. 470, 179 So.2d 51, and federal cases there cited.

■ Appellant had testified that the four or five pieces of luggage turned over to the officers by the Pulaski police did not belong to him, that he had not been in Montgomery, but went with the carnival with which he was working from Atlanta to Nashville, that he had not purchased a pistol in Atlanta; that he just met Stalker in Nashville, that Stalker had the automobile and a pistol and that he and Stalker were going from Nashville to appellant's home in Huron, Michigan when they were arrested in Pulaski. Clearly, appellant's denial of any luggage and the ownership or possession of a pistol prohibited him from raising the admissibility of the evidence on the ground that it was secured by an illegal search or seizure.

■ ■ Appellant argues that the trial court erred in refusing to give the following requested written charges:

"The law presumes the defendant is innocent of the charge against him and this presumption of innocence is evidence in his behalf to be considered by you, and you cannot find him guilty until, from the evidence, his guilt is established to your reasonable satisfaction, and beyond a reasonable doubt.

\* \* \* \* \* \*

"I charge you, ladies and gentlemen of the jury, that the indictment, information, affidavit or warrant of arrest in this case is not any evidence in this case, and the fact that the defendant was arrested is not to be considered by you as a circumstance against him, but said indictment, information, affidavit or warrant of arrest is merely the method of placing the defendant on trial, but the presumption of innocence attends the defendant throughout this trial and remains with him and authorizes an acquittal, if the entire testimony fails to overcome the presumption of the defendant's innocence, by proof of the defendant's guilt beyond a reasonable doubt and to a moral certainty."

The first charge was properly refused because it was misleading. The burden of proof in a criminal case is not to the jury's "reasonable satisfaction." Ragland v. State, 238 Ala. 587, 192 So. 498. The trial court charged, in part, as follows:

" \* \* \* A criminal case begins with an indictment. I charge you that the indictment is not evidence for the State of Alabama nor is it evidence against a defendant. The only thing that an indictment is so far as your consideration is concerned is the method the law has devised to present the nature of a case before a jury of twelve ladies and gentlemen as yourselves. Once again, it is neither evidence for nor against and anything that has gone on prior to the indictment, the warrant, the affidavit of arrest—all of those matters are not to be considered by you in this or any other case that you sit upon as criminal Court jurors. When a person is indicted there is immediately a presumption that is the very basis and foundation of our system of law and it is this presumption. A person charged with a crime in an indictment such as this is presumed to be innocent until he is proven beyond a reasonable doubt to be guilty. In other words, when an indictment is returned by the Grand Jury against a defendant it immediately places upon the State of Alabama as the party bringing the action the burden to prove the defendant guilty, as there is this presumption of innocence. Now, the measure of proof required to successfully carry that burden in behalf of the State is in a criminal case beyond a reasonable doubt. In other words, the State has the burden to prove beyond a reasonable doubt each and every one of the essential allegations or the material parts of the indictment. \* \* \* "

The second charge was refused without error since the same rules of law were substantially and fairly given in the court's oral charge to the jury. Tit. 7, § 273, Code 1940; Chambers v. State, 264 Ala. 8, 84 So.2d 342.

■ Finally, appellant argues that "every defendant, from the moment he is arrested until he is finally tried and the case disposed of, is not only entitled but required to have an attorney present in order to consult with him, advise and represent him." In oral argument, counsel concedes that no court has yet gone this far, but that this court should lead the way in making such a pronouncement. This court does not agree with all the decisions already announced that are loosing confessed and convicted criminals of serious felonies upon society. We hope for the day when many of the far-fetched opinions purportedly protecting the liberties of the individual criminals will be nullified and

overruled. We decline to add further weight to a field where the scales of justice have already been seriously tipped.

We have found no reversible error in the record.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.

## On rehearing.

Appellant states that the first charge listed in the opinion was refused in Jaco v. State, 20 Ala.App. 559, 103 So. 917, and this action constituted reversible error.

■ There is no question but that the legal presumption of innocence is evidence in behalf of the defendant and he is entitled to have the jury charged to that effect. Gordon v. State, 268 Ala. 517, 110 So.2d 334; Amos v. State, 123 Ala. 50, 26 So. 524; Harris v. State, 123 Ala. 69, 26 So. 515; Bryant v. State, 116 Ala. 445, 23 So. 40; Newson v. State, 107 Ala. 133, 18 So. 206; Perry v. State, 37 Ala.App. 683, 74 So.2d 619.

■ It is axiomatic that a defendant is entitled to have the jury charged that if, upon consideration of all the evidence, they are not convinced beyond a reasonable doubt of his guilt, they cannot find him guilty, or an equivalent of such a charge. The correct terminology in a criminal case is "beyond a reasonable doubt," because each juror must be satisfied beyond a reasonable doubt that the accused is guilty before there can be a conviction. Carter v. State, 103 Ala. 93, 15 So. 893, 6A Ala.Digest, Criminal Law, ☞789(3).

■ The correct phraseology for charges in civil cases is that the jury "being reasonably satisfied from the evidence." Atlanta Life Ins. Co. v. Stanley, 276 Ala. 642, 165 So.2d 731; Southern

Railway Co. v. Sanford, 262 Ala. 5, 76 So. 2d 164.

The judges of our circuit courts are familiar with these rules and when they see the civil terminology used in a charge in referring to the burden of proof on the State, in a criminal case, or the criminal terminology used in referring to the burden of proof in a civil case, they mark it "refused" without reading it any further because they know it is misleading.

■ Before this court will put the trial court in error for refusing a written charge, it must be free from involvement and misleading tendencies. Jackson v. State, 272 Ala. 566, 133 So.2d 210; Turner v. State, 160 Ala. 40, 49 So. 828.

It will be noted that the concluding part of the charge in question reads "and you cannot find him guilty until, from the evidence, his guilt is established to your *reasonable satisfaction,* and *beyond a reasonable doubt.*" (Emphasis supplied). The charge mixed the terminology of both the civil and criminal case requirements as to the burden of proof and was correctly refused because it was misleading. This is one of those charges which either the giving or refusing would not present reversible error, but it was more properly refused.

In Jaco v. State, 20 Ala.App. 559, 103 So. 917, the Court of Appeals said:

"The court did not in its oral charge refer to the subject covered by said written charge, and its refusal was error that will cause the case to be reversed."

We checked the original record and we find that nowhere in its oral charge did the trial court mention the presumption of innocence.

In every criminal case the defendant is clothed with the presumption of innocence, an abiding presumption to be overcome only by evidence of guilt removing all reasonable doubt. This presumption, and the burden of proof cast upon the State, should

be fully presented in the oral charge. Turner v. State, 238 Ala. 352, 191 So. 396; Smith v. State, 32 Ala.App. 155, 22 So.2d 607; Waldrop v. State, 41 Ala.App. 237, 130 So.2d 355.

We think the Court of Appeals reversed in the *Jaco* case because the trial court failed to charge on the presumption of innocence, and the "subject covered by said written charge" was the presumption of innocence. In the record of that case, only two requested charges appear in the bill of exceptions, and the charge quoted in the opinion is the only one dealing with the presumption of innocence.

We note that the charge in the *Jaco* case has been mentioned only twice in subsequent cases. In Burk v. State, 22 Ala.App. 107, 114 So. 71, the charge there before the court was held to be "materially different" from the charge in *Jaco*. In Dunn v. State, 23 Ala.App. 568, 129 So. 298, the *Jaco* case is cited with others holding it error to refuse presumption of innocence charges. We have found no cases where this court has approved a charge which included both "reasonably satisfied" and "beyond a reasonable doubt" in a presumption of innocence charge. In Thomasson v. State, 21 Ala.App. 562, 110 So. 563, where charge 1 included both "reasonably satisfied" and "beyond a reasonable doubt," the court said:

> "The measure of proof in a criminal case necessary to a conviction is beyond a reasonable doubt, and not to the reasonable satisfaction of the jury. Charge 1 was therefore properly refused. * * *"

We think this addition to our original opinion explains why we held the subject charge to be misleading and why the trial court did not commit reversible error in refusing to give it.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.