This is an appeal by the plaintiff from a judgment for the defendant based upon the defendant's counterclaim.
The plaintiff, U-Haul, brought an action for conversion against the defendant, Long, claiming $2,000.00 in damages for the value of a U-Haul trailer. It also claimed damages for loss of rental income from January 3, 1975 to May 6, 1976 and also punitive damages in the amount of $5,000.00, or a total of $12,090.00.
The defendant counterclaimed, alleging trespass and conversion by the plaintiff in taking a riding lawn mower belonging to the defendant, and demanded $38,000.00 as compensatory and punitive damages.
The plaintiff is an Alabama corporation engaged in renting automobile trailers, trucks and moving equipment. The defendant was engaged in a service station business and was a franchised dealer renting U-Haul equipment. In March, 1975 the defendant terminated his service station business to engage in a wrecker business. In that business he retained a contract with the City of Birmingham whereby his wrecker service was obliged to tow in abandoned, wrecked, stolen or confiscated automobiles and other vehicles for the City. Although the dealer contract itself provided for the surrender of all U-Haul equipment upon termination, there was evidence that this particular equipment was obtained earlier by the defendant from another local dealer pursuant to an agreement with a U-Haul agent, Byrum, in exchange for the defendant's promise to notify U-Haul about its equipment which was towed in. After the defendant's service station was closed the defendant used the trailer at the wrecker service lot in connection with that business. When on May 7, 1976 the trailer was removed from the defendant's residence by the plaintiff, it contained the riding mower locked inside.
The evidence concerning the arrangement for the defendant to retain the trailer and use it was in sharp dispute. On the one hand the plaintiff contended that there was no such arrangement. Byrum denied making such a contract, and testified that he found the trailer on a "tip," and that it was removed from a partially hidden location at the defendant's residence. Both the then president of U-Haul and his immediate predecessor denied the existence of any such contract with the defendant. The defendant, on the other hand, contended that the trailer was lent to him through an arrangement *Page 547 
with Byrum in exchange for his promise to notify U-Haul when their equipment had been hauled to the wrecker storage lot, in order to hold down their storage charges assessed by the City. The defendant testified that the trailer was kept at his wrecker service lot for almost the entire fourteen months it had been in his possession and in plain view of U-Haul's field representatives who would come there to pick up other equipment. None of these, he stated, ever asked him to return it. He had placed the mower inside the trailer and moved it from the wrecker lot to his residence where it was later found.
Shortly after the trailer was picked up, the defendant telephoned Byrum and demanded the return of the mower. Although he knew it was the defendant's mower, Byrum directed him to U-Haul's attorney. Demand was then made to the lawyer but the mower was not returned. As to that the president of U-Haul testified that it was company policy to require proof of ownership or it would let the courts decide the issue of ownership.
The evidence also disclosed that U-Haul of Alabama did not own the trailer in question and the president, Ohman, did not know the identity of the real owner, except that it would be an investor-employee of one of the U-Haul corporations. Although the company could trace a trailer in approximately three weeks, their records did not show that any tracer had been made on this trailer and Ohman did not know of any having been made during the sixteen months it was out of service. Mr. Ohman also testified that the type of contract described by the defendant, allowing him to use the trailer, would not have been shown in the company's activity record for that trailer.
The defendant testified that his mower was about one year old and had cost between $500 and $600 when new. Mr. Byrum testified that it had been used by the U-Haul Company at its moving center to pull trailers around, from the "four by six" size weighing close to 500 pounds to the "six by twelve" size, a steel trailer six feet wide by twelve feet long.
The U-Haul trailer in question was a discontinued model which had been manufactured at a cost of $470.00 in 1968, and had a replacement cost of $945.00. The company claimed a rental of $6.00 per day for every day the trailer was in the defendant's possession, but the evidence showed that prior to that time it had never been rented a full thirty days in any one month and in the months of September, October and November prior to his possession it had not been rented one day.
After hearing the evidence the jury rejected the plaintiff's claim, found for the defendant on his counterclaim, and awarded him damages in the sum of $12,500.00. Judgment was entered accordingly. The plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, was denied, and this appeal ensued.
The plaintiff has posed a number of issues for our consideration, but these really involve only two questions: (1) whether the damages award was excessive; and (2) whether the trial court erred in refusing certain jury instructions on the law of qualified refusal to surrender personal property.
In connection with the first issue, the plaintiff contends that the jury's award, some twenty-four times the value of the defendant's property, was unfair and clearly not justified as a punishment. This argument, we respectfully submit, overlooks the position the jury was in under the law and the evidence. Here the jury could have found that the plaintiff's use of the mower was a conversion through an illegal user or misuser.Scott Paper Co. v. Novay Cherry Barge Service, Inc.,48 Ala. App. 368, 265 So.2d 150 (1972); Jesse French Piano andOrgan Co. v. Johnston, 142 Ala. 419, 37 So. 924 (1904). Although under that class of conversion no demand and refusal is necessary, there were here three separate demands for the mower's return. It was never returned but, instead, was put to use in the plaintiff's business, and, having been denied to the defendant from the date of its taking, May 7, 1976, was never returned. And all of this occurred under circumstances *Page 548 
in which the plaintiff itself admittedly did not have title to the very trailer from which the defendant's mower had been removed by the plaintiff, and, in fact, had made no attempt to trace its whereabouts. Without belaboring the evidence here, the jury could have believed also that the officials at U-Haul had made no effort to identify or to locate the owner; indeed the agent Byrum knew within a few days after the taking that the defendant was the owner, and Mr. Ohman knew in 1977, after reading the defendant's deposition, that the defendant's mower was the one detained by the company. This evidence justified the jury in concluding, as it must have, that the misuse was a knowing and intentional violation of the defendant's legal rights, or was accomplished in disregard of them. Cf. RayHughes Chevrolet Inc. v. Gordon, 294 Ala. 638, 320 So.2d 652
(1975) (claim of $15,000 punitive damages, counterclaim for $216.62; jury verdict and judgment for $14,783.38 damages.) On the appeal of that case this Court did not find excessive the amount of damages as fixed by the jury in its discretion.
Punitive damages need bear no particular relationship to actual damages; whether they are excessive depends upon whether or not the judicial conscience is shocked. Foster v. Floyd,276 Ala. 428, 163 So.2d 213 (1964). Unless they are so excessive as to indicate prejudice or passion their award will not be reversed, Pinckard v. Dunnavant, 281 Ala. 533, 206 So.2d 340
(1968). Upon this record we cannot state that the jury was incorrect or that the trial court erred in overruling the plaintiff's motion for a new trial. Walker v. Cardwell, Ala.,348 So.2d 1049 (1977).
The following are the jury charges requested by the plaintiff and refused by the trial court:
 I charge you that where personal property is withheld from the true owner or his agent for a reasonable time after demand, for the purpose of enabling the holder to determine who has the right of possession, the detention is reasonable and does not constitute a conversion. If you believe from the evidence that Plaintiff withheld the personal property for a reasonable time after demand, then the Plaintiff is not guilty of conversion.
 I charge you that a limited or qualified refusal to surrender possession of personal property to one entitled thereto, is not per se a conversion, but the refusal must be a reasonable qualification or requirement and stated in good faith. If you believe from the evidence that Plaintiff's refusal after demand to deliver the personal property to be a reasonable qualification or requirement and stated in good faith, then the Plaintiff is not guilty of conversion.
These requested charges are hypothesized upon the jury'sbelief from the evidence. Neither requested charge is predicated upon the jury's being reasonably satisfied from the evidence. The correct phraseology for charges in civil cases is that the jury "be reasonably satisfied from the evidence."Atlanta Life Insurance Company v. Stanley, 276 Ala. 642,165 So.2d 731 (1964); 18A Ala.Dig., Trial, §§ 228 (3), 234 (3), (4), 237 (3). Thus the trial court did not err in refusing these charges.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.